[L. A. No. 25193.   In Bank.   Feb. 18, 1959.]

JOHN R. BRUNNER, Petitioner, v. SUPERIOR COURT OF ORANGE COUNTY, Respondent; WILSHIRE OIL COMPANY OF CALIFORNIA (a Corporation), Real Party in Interest.

Wirin, Rissman & Okrand, A. L. Wirin and Paul M. Posner for Petitioner.

Joel E. Ogle, County Counsel and Stephen K. Tamura, Assistant County Counsel, for Respondent.

Rutan, Lindsay, Dahl, Smedegaard, Howell & Tucker, Milford W. Dahl, Richard W. Curtis and James G. Degman for Real Party in Interest.

McCOMB, J.—Petitioner seeks a writ of mandate requiring respondent court to vacate its order directing him to answer certain questions propounded upon the taking of his deposition.

*Facts*: Petitioner, a duly licensed attorney at law, filed an action in the Superior Court of Orange County on behalf of Fred C. Hermann. This was a taxpayer's action for the benefit of the city of Huntington Beach against the Wilshire Oil Company to invalidate an easement granted to the company by the city.

On July 16, 1958, a deposition proceeding was held, at which petitioner, while being questioned, stated that after the action had been commenced a person other than Fred C. Hermann consulted him for the purpose of obtaining legal advice, with a view to retaining him in his professional capacity.[1] Counsel for the real party in interest, Wilshire Oil Company, asked

---

[1]The following excerpts from the transcript of the deposition are the only references to the question of the attorney-client relationship:

"Q. You are the attorney for the Plaintiff in this action? A. I am.

"Q. And you have been his attorney ever since the beginning of the action; is that right? A. Yes.

"Q. And are you the only attorney? A. Yes.

"Q. And he is the only client that you have in this connection? A. No. We have 10,000 clients. This is a representative derivative action of every taxpayer of Huntington Beach, including Mr. Bauer is a client. (Indicating.)

"Q. Have you ever conferred with any of your other clients about this matter? A. Yes.

"Q. And would you give me the names of the clients that you have conferred with, please? A. No.

"Q. Why not? A. You are asking me to reveal the identity of clients who haven't given me the authority to do that, and——

"Q. Do you claim this matter is privileged? A. I claim it is privileged.

"Q. Well now, I don't want to take unfair advantage of you, Mr. Brunner, but any time I cite you to court I am going to at the same time move for reasonable attorneys' fees and costs, and I would like to call your attention to certain cases in the State of California, which require that an attorney disclose by whom he was employed. A. By whom I was employed?

"Q. That's right. A. I have already said. I was employed by Mr. Fred Hermann.

"Q. Have you been employed by anyone else in connection with this case? A. In connection with this case, no.

"Q. All right. And you have no agreements with any of these other clients, do you? A. No.

"Q. So the only respect with which they are clients is the fact that

petitioner to name this party and to disclose the matters communicated to him. Petitioner refused to answer upon the ground that the answers were privileged under section 1881, subdivision 2, of the Code of Civil Procedure.[2]

■ *Questions*: First. *Did the trial court err in directing petitioner to reveal the name of a person who consulted him relative to possible employment?*

*No.* Petitioner does not claim that the privilege would exist if the person who consulted him was not a client of his. However, it is the general rule that an attorney is not privileged to withhold disclosing by whom he has been employed. (*Satterlee* v. *Bliss*, 36 Cal. 489, 507; *Tomlinson* v. *United States*, 68 App. D.C. 106 [93 F.2d 652, 655 [8-10], 114 A.L.R. 1315]; see note 114 A.L.R. 1321 et seq. (1938); *cf. Ex parte McDonough*, 170 Cal. 230, 238 [149 P. 566, Ann.Cas. 1916E 327, L.R.A. 1916C 593].) Therefore, even if the person who consulted petitioner were his client, petitioner can still be required to reveal the person's name.

■ Second. *Does the fact that a person is a taxpayer in a class similarly situated with petitioner's client give rise to a claim of privilege relating to any communication made by such person who is not otherwise a client of petitioner?*

*No.* ■ The following rule is here applicable: The rule excluding the testimony of an attorney as to confidential communications made to him by his client must be strictly construed, as it has a tendency to suppress relevant facts that may be necessary for a just decision. (*Satterlee* v. *Bliss, supra*, at 508; *City & County of San Francisco* v. *Superior Court*, 37 Cal.2d 227, 234 [10] [231 P.2d 26, 25 A.L.R.2d 1418].)

---

they are taxpayers similarly situated with Mr. Hermann as far as you are concerned; is that right? A. Yes.

"Q. And you have never discussed with these other clients that you have whether or not you actually represent them, have you? A. Discussed whether I actually represent them?

"Q. Yes. A. Well, I tried to make it clear to every resident of Huntington Beach that I represent them in this action.

"Q. I see, but that's the only communication that you have had with them as your client; is that right, to try to tell them that you are representing them as taxpayers and you are their attorney; is that right? A. Yes."

[2]Section 1881, subdivision 2, of the Code of Civil Procedure reads: "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity."

Petitioner claims that all the taxpayers in the city of Huntington Beach became his clients by reason of their being in the status of taxpayers of Huntington Beach and therefore discussions which he had with any of them became entitled to the attorney-client privilege.

Petitioner was asked this question: "So the only respect with which they are clients is the fact that they are taxpayers similarly situated with Mr. Hermann as far as you are concerned; is that right?" to which he answered, "Yes." The following questions asked petitioner and his answers thereto also appear in the record:

"Q. And you have never discussed with these other clients that you have whether or not you actually represent them, have you? A. Discussed whether I actually represent them?

"Q. Yes. A. Well, I tried to make it clear to every resident of Huntington Beach that I represent them in this action.

"Q. I see, but that's the only communication that you have had with them as your client; is that right, to try to tell them that you are representing them as taxpayers and you are their attorney; is that right? A. Yes."

It is apparent that the attorney-client relationship does not arise merely because an attorney says to a taxpayer, "You are my client because you are a taxpayer." Neither does the fact that a person is a taxpayer similarly situated with a client of an attorney, by reason of that fact alone, become a client of such attorney with the result that the attorney-client privilege may be claimed by the attorney.

The alternative writ is discharged, and the peremptory writ is denied.

Gibson, C. J.; Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

that he suffer so that property could be extorted from him, it was proper for the court to advise the jury that defendants were innocent or were guilty of first degree murder, and the court did not err in failing to give requested instructions on the degree of the crime.