[Civ. No. 59215. Second Dist., Div. One. Nov. 19, 1980.]

JACK R. WILLIS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
KEN WILLIS, Real Party in Interest.

COUNSEL

Jack R. Willis, in pro. per., Mark S. Pollock and Stanley D. Clough for Petitioner.

No appearance for Respondent.

Green, Pollon & Smith and Ronald S. Smith for Real Party in Interest.

OPINION

AUERBACH, J.*—This is a petition for a writ of prohibition by Jack R. Willis against enforcement of an order made by respondent court directing the petitioner to answer certain interrogatories propounded by the defendant and real party in interest Ken Willis.[1]

Petitioner (plaintiff) has presented us with an incomplete record. He has provided us with no copies of the at-issue pleadings in the case, nor with any of the minute orders made by the trial court, nor with any of his moving papers in opposition to the defendant's motion to compel answers to the interrogatories. Defendant's answer to the plaintiff's application for a writ of prohibition has been helpful in rectifying some of these deficiencies.

From the sparse record, we are able to distill that plaintiff Jack R. Willis and defendant Ken Willis are brothers, that each is an attorney and that they became associated in the practice of law in 1973. This relationship terminated in about mid-December of 1976, with acrimony over the financial claims each was making against the other. On March 15, 1977, after settlement negotiations had proven fruitless, plaintiff filed this action. By April 1978, plaintiff's third amended complaint proved viable. It includes actions for breach of contract, accounting, interference with contractual relationships, and unfair competition. In connection with his answer, defendant interposed a cross-complaint alleging interference with business relations, interference with prospective advantage, breach of contract, a common count for money had and re-

---

*Assigned by the Chairperson of the Judicial Council.

[1]In this opinion we refer to the parties as they stand in the original litigation, designating petitioner as "plaintiff" and the real party in interest as "defendant."

ceived, a statutory cause of action under Labor Code section 1054, and for punitive damages. The respective pleadings allege conflicting versions of the nature and character of the law association between the Willis brothers. In his cause of action for an accounting, plaintiff recited the arrangement as follows:

"4.   On or about January 1, 1973, plaintiff and defendant made and entered into an oral agreement of association for carrying on the business of practicing law. Said agreement was made in the County of Los Angeles and was to be performed in that county under the name and style aforesaid. It was part of said agreement that defendant would be paid a monthly association fee in money, United States currency, in the amount of approximately $750.00 per month, and said sum was increased from time to time by oral agreement of the parties to the amount of approximately $1,200.00 per month; that defendant would work on such matters and cases as were assigned to him by mutual agreement of plaintiff and defendant; that defendant would be paid one-third of the fees received on those cases and matters generated by defendant as to which no portion of the fee was payable to any other attorney; that defendant would be paid monthly amounts as advances against said one-third interest in fee (hereinafter referred to as defendant's drawing account); that in the event that from time to time the total amount of money paid to defendant as part of his drawing account should exceed the amount of money payable to defendant by reason of said interest in fees, defendant would pay to plaintiff amounts of money equal to said excess.

"5.   The contract aforesaid was terminated by the parties on December 15, 1976, and their association thereupon ended.

"6.   During the period from January 1, 1973, to December 15, 1976, plaintiff did wholly perform all covenants and conditions of said contract to be performed by him. In the course thereof, plaintiff paid to defendant, monthly, his association fees in said amounts as the parties did from time to time agree, and plaintiff did pay to defendant monthly amounts as advances on defendant's drawing account, in amounts from time to time agreed to by the parties. As of December 15, 1976, plaintiff had paid to defendant, as advances, an amount which exceeded defendant's one-third interest in fees actually received. Plaintiff is unable to state the full amount of such excess but plaintiff knows that excess consists in part of Fifteen Thousand Two Hundred Sixty-Four ($15,264.00) Dollars. Plaintiff, on or about December 15, 1976, and

continuously thereafter, has requested defendant to account for the amounts actually paid to defendant as and for his drawing account during the period of the contract aforesaid, and for the amounts payable to defendant on account of his one-third interest under said contract, and to pay the full and true amount by which the sums actually paid to defendant as and for his drawing account exceed the amounts payable to him by reason of his interest in fees aforesaid. Defendant on or about December 15, 1976, and continuously thereafter, has refused and failed to make such accounting and payment, or any accounting or payment whatever, or at all."

Having curiously truncated his cause of action for accounting, petitioner resumes a second cause of action for accounting in the following language: "8. On or about December 15, 1976, in connection with the termination of the Agreement, aforesaid, plaintiff and defendant made a further oral agreement with reference to the division of fees on cases and matters from the Law Offices of Jack R. Willis which defendant would thereafter handle in accordance with the wishes of the respective clients therein. Said further agreement was that as to all cases and matters which had not been completed and the fee earned as of December 15, 1976, the fee payable to the Law Offices of Jack R. Willis would be determined by prorating the time spent on each such case or matter on and prior to December 15, 1976, to the total time spent thereon, and the portion of the fee so prorated would be paid to plaintiff. Said further agreement was also that as to such matters on which all or substantially all of the work had been completed, as of December 15, 1976, and the fee all or substantially earned by that date, the fee, less any amount payable to defendant pursuant to the Agreement alleged in the First Cause of Action hereof, would be paid to plaintiff.

"9. Plaintiff has requested defendant to account for the fees received and payable to plaintiff pursuant to the Agreement alleged in paragraph 8 hereof, and to pay to plaintiff the portions of said fees, payable to plaintiff in accordance with the Agreement alleged in said paragraph 8. Defendant has in his possession all files and records from which the fees payable to plaintiff, on cases and matters can be determined. Defendant has at all times herein material refused and failed to make such accounting and payment and has refused and failed to discuss such matters with plaintiff, either personally or through counsel."

In connection with his third cause of action for interference with contractual relations, the following allegations appear: "11. By reason of

the Agreement alleged in paragraph 4 of the First Cause of Action and the professional relationship between plaintiff and defendant created thereby defendant had full and unrestricted access to all of the files and records of the Law Offices of Jack R. Willis. The information contained in said files was confidential and unique in that it was not available to the general public, was compiled by the Law Offices of Jack R. Willis in the course of its business, was available to defendant only by reason of said Agreement and his relationship with plaintiff aforesaid. Said information has been compiled by the Law Offices of Jack R. Willis through large and substantial expenditures of time, effort and money.

"12. Beginning on or before December 15, 1976 and continuing down to the day hereof defendant has engaged in a course of conduct wilfully and knowingly calculated to induce clients of plaintiff to terminate, without cause, their contracts retaining plaintiff to perform legal services."

Plaintiff's cause of action for unfair competition reads in part as follows, after incorporating prior allegations: "16. Beginning on or before December 15, 1976 and continuing down to the date hereof defendant has used said records and files for his own benefit, and not for the benefit of plaintiff, and has intentionally and wilfully solicited the business and patronage of plaintiff's clients and diverted and induced many of said clients to enter into contracts of the same or similar nature as those offered by plaintiff to said clients for the performance of legal services. The names, addresses and telephone numbers of said clients were known to defendant only through plaintiff's files and the association of defendant with plaintiff as aforesaid. But for the intentional and wilful interference by defendant in plaintiff's relationships with said clients, they would have continued to use the legal services of plaintiff."

So far as is material to the resolution of this case, the following allegations are extracted from the fourth cause of action of defendant's cross-complaint concerning the nature of the contract that he alleges petitioner breached: "23. On or about December 14, 1972, cross-complainant, Ken Willis and cross-defendant Jack R. Willis entered into an oral agreement whereby Jack R. Willis agreed to pay Ken Willis a guaranteed salary of $1,000 per month on and after that date and 1/3rd of the gross fees of all business brought into the office after that date by Ken Willis over and above his guarantee. On or about December 14, 1973, Ken Willis and Jack R. Willis entered into an oral

agreement whereby in addition to all other sums Ken Willis was to be paid $300.00 per week for a vacation period which was to be one month each year to be taken at Ken Willis' election.

"24. On or about December 14, 1974, Ken Willis and Jack R. Willis entered into an oral agreement whereby Ken Willis was to be paid $1,000.00 as a guaranteed salary per month and in addition to that sum, Ken Willis was to be paid one-third of the gross fees of all business brought into the law office of Jack R. Willis. In addition to the above sums, Ken Willis was to be paid four weeks paid vacation at the rate of $420.00 per week, said vacation to be taken at Ken Willis' election.

"25. On or about September 1, 1976, Ken Willis entered into an oral agreement with Jack R. Willis to the effect that all prior agreements would remain in effect and that Ken Willis would be paid a bonus of $1,000.00 for services rendered in settling numerous personal injury and workers' compensation cases for Jack R. Willis. In addition to the above sum, it was agreed that Ken Willis would be compensated for a vacation period which was not taken during the 1976 year in the sum of $420.00 per week for three weeks."

On or about May 30, 1979, defendant sent a set of interrogatories consisting of 64 questions on 40 pages to John McTernan, a member of the law firm representing plaintiff. Including in these interrogatories were questions number 21, and 42 through 49, which are quoted later in this opinion. Plaintiff failed to answer these interrogatories within the prescribed time, but defendant accorded his attorney extensions of time in which to file a response, the last one being October 4, 1979. Finally, on October 19, 1979, defendant informed McTernan that he was being granted a final extension to December 5, 1979, but only to answer and not to object to the interrogatories. Plaintiff alleges that he was unaware of this correspondence between Mr. McTernan and defendant's counsel, and would not have accepted the condition had he known of it.

In mid-November 1979, defendant was advised by Mr. McTernan that he would no longer be representing plaintiff in the lawsuit. On November 16, 1979, defendant sent a letter to plaintiff, informing him that the interrogatories that were propounded on May 30, 1979, must be answered by December 5, 1979. On November 28, 1979, plaintiff substituted his own law office as his attorney of record in place of Mr. McTernan and his law firm. Unable to receive any further extension of

time, plaintiff advises us that he made a motion on December 27, 1979, requesting both an extension of time to respond and for a protective order, and that he attached to that motion a set of proposed answers to the interrogatories.[2] Apparently concurrently with plaintiff's motion, defendant moved to compel answers to the interrogatories of May 30, 1979. Both motions were continued to February 8, 1980, at the request of plaintiff.

Interrogatory number 21 reads as follows: "21. With regard to the allegations against this defendant contained in paragraph 11 of the Third Amended Complaint that, 'The information contained in said files was confidential and unique in that it was not available to the general public, was compiled by the law offices of Jack R. Willis in the course of its business, was available to defendant only by reason of said agreement and his relationship with plaintiff aforesaid', please state:

"(a) Each and every fact upon which you now base said allegations;

"(b) With regard to any persons whom you claim, or claims to have knowledge of any such facts, please state the name and address of such person and the particular facts of which said person has knowledge;

"(c) If said allegations are based on all or any part of the writing, please identify fully such writing, also giving the name and address of the present custodian of said writing and the substance of the writing;

"(d) If said allegations are based in whole or in part on any oral communication, please state the date, the time and place of said communication, the name and address of those a party to the communication, the name and address of those present at the communication and the substance of the communication."

Defendant's proposed answer to this interrogatory reads as follows: "21. Defendant, inasmuch as he claims to be an [*sic*] competent attorney, should, of course, realize that the relationship between attorney and client would not be available to the general public, and that a contact with someone, not the attorney, rendering professional legal services to that attorney, has access to that file only because of his professional relationship to that attorney. Except as hereinabove answered,

---

[2]These documents are not incorporated into the petition for mandate, except that plaintiff has supplied us with a copy of his proposed answers to the interrogatories.

this question is objected to on the grounds that stating each and every fact upon which this allegation is based would require that plaintiff disclose the contents of a number of files involving clients, their apportionment of fees for which is a measure point [*sic*] of contention within this case. To disclose the contents of these files would necessarily violate the confidential relationship between plaintiff and these clients and plaintiff must therefore object to this interrogatory on the grounds that it violates the attorney-client privilege."

Interrogatories 42 and 43 read as follows: "42. Please state the name and last known address of all clients that you contend were brought into the law offices of Jack R. Willis through the efforts of Jack R. Willis for the year 1973.

"43. For each client referred to in the answer to the preceeding [*sic*] interrogatory, please state:

"(a)   What is the date that the case was received in the law offices of Jack R. Willis?

"(b)   What is the amount of the costs advanced by Jack R. Willis?

"(c)   What is the date of the disposition of the case and the manner in which it came to a conclusion?

"(d)   How much attorney's fees were awarded and whom were they awarded to?

"(e)   What is the amount of the costs recovered in the case?

"(f)   What is the approximate number of hours that you contend that Ken Willis worked on the case before December 20, 1976?

"(g)   What is the approximate number of hours that you contend that Ken Willis worked on the case after December 20, 1976?

"(h)   What is the approximate number of hours that you contend that Jack R. Willis worked on the case?"

Interrogatories 44, 46, and 48 are the counterparts of interrogatory 42, except that they refer, respectively, to the years 1974, 1975, and 1976. Interrogatories numbers 45, 47 and 49 are the precise copy of in-

terrogatory number 43, and are in sequential order applicable to the years 1974, 1975 and 1976.[3]

Plaintiff advises us that his initial motion for a protective order on December 27, 1979, and his opposition to defendant's motion to compel answers to the interrogatories had both relied on the attorney-client privilege which he raised on behalf of his absent clients.[4] He further advises us that on February 4, 1979, he served a supplemental pleading predicating his argument for a protective order on his clients' constitutional right to privacy and asserting that he should not be required to disclose the information sought in the interrogatories except to the extent that it was disclosed in his proposed answers. Although we do not have the benefit of those documents, we will treat them as issues raised in this petition because defendant has responded to them.

On February 8, 1980, the Honorable Richard F. C. Hayden of the Los Angeles Superior Court denied plaintiff's motion for a protective order and ordered plaintiff to answer without objection all of the interrogatories.

Plaintiff, having failed to comply with the order of February 8, 1980, the matter was once again heard on June 23, 1980, by the Honorable William J. Rea, who ordered plaintiff to answer without objection the interrogatories which are the subject matter of this petition.

### Procedural Background

The petition for writ of prohibition was originally filed in this court on April 25, 1980, and was summarily denied on June 5, 1980, because of the limited record supplied. Thereafter, plaintiff petitioned the Supreme Court for a hearing. The petition was granted, but the Supreme Court retransferred the matter to this court, with directions to issue an

---

[3]The proposed answer to interrogatory number 42 was as follows: "42. This interrogatory is objected to on the following ground: [¶] 1. It is overbroad in its scope; [¶] 2. It seeks information both relevant and irrelevant to the subject matter since the overwhelming majority of Jack R. Willis' caseload does not concern clients claimed by Ken Willis, and these cases, therefore, are not in contention; [¶] 3. It seeks information complied [sic] and ascertained during, and throughout the course of, Jack R. Willis' confidential relationship with said client; to divulge such information would be violative of the attorney-client privilege."

Each of the proposed responses to interrogatories 43 to 49 inclusive read: "See response to Interrogatory Number 42."

[4]As previously indicated, we do not have a copy of plaintiff's motion.

alternative writ of prohibition, citing *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977].

Given the posture of the case, and the continued insufficiency of the record, we construe the Supreme Court's retransfer as a direction to deal with the essential issues in this case, namely, whether the orders for the disclosures required by the interrogatories in question are valid in view of the claimed invasion of the attorney-client privilege (Evid. Code, § 954) and the parallel contention that disclosure is precluded by the right of privacy of the nonparty clients secured by article I, section 1 of the California Constitution.[5]

■ An application for a prerogative writ is appropriate in discovery cases where an order of the trial court granting discovery purportedly violates a privilege involving the attorney-client relationship (*Roberts v. Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309]), or constitutes an invasion of the constitutional right of privacy. (*Fults v. Superior Court* (1979) 88 Cal.App.3d 899 [152 Cal.Rptr. 210].)

*Preliminary Statement*

■ It is elementary that discovery in civil litigation is permissible if the information sought is "not privileged," is "relevant to the subject matter involved in the pending action," and is "reasonably calculated to lead to. the discovery of admissible evidence." (Code Civ. Proc., § 2016, subd. (b).) In *Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2

---

[5]Except for the fact that plaintiff is asserting claims on behalf of the alleged protectible interests of third parties, he would not be entitled to relief on the record presented. A party's failure to object to interrogatories within the time provided ordinarily results in a waiver of his right to object. (*Coy v. Superior Court* (1962) 58 Cal.2d 210 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; *West Pico Furniture Co. v. Superior Court* (1961) 56 Cal.2d 407 [15 Cal.Rptr. 119, 364 P.2d 295].) A stipulation providing for an extension of time to object extends the time for objection beyond the 30-day period in section 2030 of the Code of Civil Procedure. A motion for a protective order should be "reasonably made" (Code Civ. Proc., § 2019, subd. (b)(1)), normally within the 30-day period for answering interrogatories or within the period of the stipulated extension. Relief from failure to timely object or make a timely motion for a protective order may in a proper case be available under Code of Civil Procedure section 473. Plaintiff does not dispute that he failed to comply with the provisions of the code for timely objections but lays the blame on his former attorney's mishandling of the case. Plaintiff does not enlighten us as to whether he has satisfied the requirements of section 473 for relief from his untimely objections to the interrogatories and his untimely motion for a protective order.

Cal.3d 161, 173 [84 Cal.Rptr. 718, 465 P.2d 854], it was stated: "...the relevance of the subject matter standard must be reasonably applied; in accordance with the liberal policies underlying the discovery procedures, doubts as to relevance should generally be resolved in favor of permitting discovery [citation]." (Fns. omitted.)

Petitioner does not challenge the implied conclusion below that the requested information is "relevant" to defendant's defense and cross-complaint in the underlying action. It is clear that the information sought by defendant and cross-complainant is calculated to assist him in establishing his claim for a money judgment based on breach of contract and to defeat plaintiff's action for an accounting in his favor.

Our inquiry is directed to whether the discovery orders offend against the attorney-client privilege and, if not, to examine if they are in conflict with recent cases limiting such discovery as trenches upon the right of privacy of nonlitigants.

## II

### *The Interrogatories Do Not Require Disclosures Which Impermissibly Infringe on the Attorney-client Privilege*

The attorney-client privilege has been embedded in Anglo-Saxon jurisprudence for four centuries. (McCormick, Evidence (2d ed. 1972) § 87, pp. 175-179.) ■ The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between the attorney and the client, unless such privilege has been waived by the client. (*Klang v. Shell Oil Co.* (1971) 17 Cal.App.3d 933, 937 [95 Cal.Rptr. 265]; Evid. Code, § 950 et seq.) Its purpose is to promote freedom of consultation between the lawyer and his client and to encourage full disclosure of the facts without apprehension that subsequent disclosure can be compelled from the lawyer without the client's consent. (*American Mut. Liab. Ins. Co. v. Superior Court* (1974) 38 Cal.App.3d 579, 593 [113 Cal.Rptr. 561]; *Glade v. Superior Court* (1978) 76 Cal. App.3d 738, 746 [143 CAl.Rptr. 119].) ■ Although the privilege belongs only to the client, the attorney's professional obligation requires him to invoke it on his client's behalf, absent other instructions; and he is entitled to assert such privilege in the course of a discovery motion during litigation to which his clients are

not parties and in which they have no interest. (*Glade, supra,* 76 Cal.App.3d 738, 744-745.) ■ Thus, notwithstanding plaintiff's failure to make a timely objection with respect to discovery on matters relating to himself alone, the mere nonappearance of his clients to make a timely assertion of the privilege on their own behalf in an action to which they are not parties and without knowledge that confidential communciations are being sought does not constitute a waiver of the privilege retained by the client. (*Glade, supra,* 76 Cal.App.3d 738, 744-745.)

■ Although the attorney-client privilege is couched in broad terms, not every communication during the attorney-client relationship is deemed matter given in confidence. Because the privilege tends to suppress otherwise relevant facts, it is construed so that certain species of information communicated to the attorney may nevertheless be subject to disclosure as nonprivileged. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 397 [15 Cal.Rptr. 90, 364 P.2d 266].)

■ Thus, it is the majority American rule that the identity and address of an attorney's client is not per se a confidential communication protected by the attorney-client privilege when there is a legitimate need for a court to require such disclosure. (See Annot.; 16 A.L.R.3d 1047, 1051, et seq.; 8 Wigmore, Evidence (McNaughton rev.ed. 1961) § 2313.) In connection with the identity exception to the attorney-client privilege, many courts have held that the nature of the attorney's fee arrangements with his client, in an appropriate case, is not absolutely protected by the ambit of the privilege. (*United States* v. *Sherman* (9th Cir. 1980) 627 F.2d 189; Zwerling *Federal Grand Juries and Attorney Independence and the Attorney-client Privilege* (1976) 27 Hastings L.J. 1263, 1286-1290.)

These rules are subject to a significant exception. As expressed in *United States* v. *Hodge and Zweig* (9th Cir. 1977) 548 F.2d 1347, 1353: "A client's identity and the nature of that client's fee arrangements may be privileged where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal service was sought. [Citation.]"

These authorities reflect the tenor of the California cases, as well as the case of *Baird* v. *Koerner* (9th Cir. 1960) 279 F.2d 623, which was decided by reference to the California law.

In *Brunner* v. *Superior Court* (1959) 51 Cal.2d 616 [335 P.2d 484], the court stated the general rule, by way of dictum, that an attorney is not privileged to withhold disclosing by whom he has been employed.[6] The rule was originally expressed in the case of *Satterlee* v. *Bliss* (1869) 36 Cal. 489.

Nevertheless, California courts recognize that the rule is not unqualified and that where disclosure of identity might harm the client by being used against him under circumstances where there are no countervailing factors, then it would be protected by the privilege. Such a case is *Ex Parte McDonough* (1915) 170 Cal. 230 [149 P. 566], in which an attorney was employed to represent individuals being investigated for election fraud. At the request of his clients, he appeared for other persons who had been indicted and provided cash bail on their behalf. The court held that the attorney could not be compelled to testify as to the identity of the client who employed him to defend the accused and to furnish the cash for the bail. The court recognized that "the identity of the attorney's client, or the name of the real party in interest, will seldom be a matter that can be held, under the law, to have been communicated in confidence." (*Ibid.*, p. 235.) Nevertheless, the court concluded that under the circumstances of that case, the privilege extended to nondisclosure of the client's identity when to divulge that name might subject the client to prosecution for a crime against whose prosecution the attorney had been employed to defend him.

Similarly, this qualification was recognized in *People* v. *Sullivan* (1969) 271 Cal.App.2d 531 [77 Cal.Rptr. 25]. In the *Sullivan* case, an attorney testified on direct examination that he had obtained a box containing three pistols and certain papers on which defendant's name appeared by presenting a claim check given him by a client for whom he obtained the box. On cross-examination, the attorney was asked for whom he obtained the box, whereupon he claimed the attorney-client privilege. On appeal, the contention was sustained, the court recognizing the principle that the revelation of identity might conceivably connect his client with criminal activity.

In *Baird* v. *Koerner, supra,* 279 F.2d 623, Baird, an attorney, received a sum of money from another attorney representing clients who

---

[6]The actual holding was that the facts did not establish the existence of an attorney-client relationship.

had not paid taxes but who wished to send the tax amounts anonymously to the government, thereby insulating themselves against any I.R.S. investigation. Baird sent the I.R.S. a cashier's check for the amount he received, together with a letter instructing the I.R.S. to deposit the money in its fund for unidentified collections. The I.R.S. summoned Baird to reveal the names of the taxpayers. Baird refused to answer by invoking the attorney-client privilege. The Ninth Circuit court applied California law in upholding the assertion of the privilege. It recognized the general statement of the law pronounced by *Brunner* v. *Superior Court, supra*, 51 Cal.2d 616, but held that that case did not establish that the identity of an attorney's client is never privileged. Relying upon *Ex Parte McDonough, supra*, 170 Cal. 230, the court reasoned that a disclosure of the persons employing Baird would disclose the identity of the persons who were paying the tax which might result in their incrimination.

It is obvious that a determination of whether a client's name and address and his fee arrangement with his attorney is a privileged communication will depend on an analysis of the facts of the case and the potential for harm to the client if the identification and compensation is compelled. Thus, we are charged with weighing the competing policies of guaranteeing, on the one hand, the right of every person to freely confer with and confide in his attorney in an atmosphere of trust and serenity while on the other hand, protecting "the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings." (*In re Lifschutz* (1970) 2 Cal.3d 415, 432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].)

█ Our function in reviewing the orders in question is epitomized in *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 171 [84 Cal.Rptr. 718, 465 P.2d 854], as follows: "In reviewing an order of a superior court granting discovery, we recognize at the threshold that 'the discovery statutes vest a wide discretion in the trial court in granting or denying discovery' and 'such exercise [of discretion] may only be disturbed when it can be said that there has been an abuse of discretion.' [Citation.]"

Examining the interrogatories in the light of the principles enunciated, we find no basis for overturning the orders compelling discovery. █ Interrogatory number 21 is directed to an allegation in plaintiff's complaint stating that the information contained in the client's files was

confidential and unique in that it was not available to the general public, was compiled by plaintiff in the course of business, was available to defendant only by reason of an agreement and his relationship with plaintiff. All that the interrogatory requires is that the plaintiff state facts upon which such allegation is based, the persons having knowledge of such facts, the writings which would support the contention, and any information about the time and place of any oral statements in support of the allegation. While plaintiff might have objected to this question on various grounds which he is precluded from now raising because of his own laches, we do not consider that it facially in any way impinges on communications made in confidence in connection with the attorney-client privilege. There is no effort made here to discover any scintilla of information contained in any client's file, confidential or otherwise. It is essentially directed at plaintiff's claim that defendant interfered with his contractual relations with his clients. It concerns itself primarily with the mutual claims that each of the former associates was diverting clients in derogation of the other's rights.

■ The remaining interrogatories require disclosure of the names and addresses of all clients brought into the plaintiff's law offices for the years 1973 to 1976 (while the parties were associated in the practice of law). In respect to such clients, the interrogatories request disclosure of the date when the plaintiff received the case, the approximate number of hours each of the parties worked on the cases before and after December 20, 1976, the amount of costs advanced and recovered by plaintiff in each case, the date and manner of disposition of each case and the amount of attorney's fees awarded.

This information is discoverable as being evidence directly relevant to the issues in this dispute between these two former law associates. Each is claiming the necessity for an accounting and each is contending that the other is wrongfully appropriating the other's clients. Plaintiff has alleged that one way to determine the fee payable to plaintiff would be to prorate the time spent on each case prior to December 15, 1976, and the total time thereafter, and the prorated portion of the fee paid to plaintiff. Defendant has alleged that he was to be paid one-third of the gross fees brought into plaintiff's office. Thus, discovery of the names of the clients and the amount of fees generated is germane to resolution of the litigation. Plaintiff has made no showing as to how the revelation of the names and addresses of clients of the office to a lawyer-associate who, whether he worked on their cases or not, falls within the realm of

a protected confidential communication. The general rule that such information is unprivileged is here applicable and plaintiff has not shown that any circumstances exist for application of the exception to the rule. While such exceptions can and do exist, none are here apparent.

The remaining questions as to costs advanced and recovered, the date and manner of disposition of the case, and the amount of fees awarded and how distributed do not fall within the category of a confidential communication. The reference to award of fees suggests awards made by a court, by a workers' compensation judge, an arbitrator or some other public forum. The reference to disposition of a case calls only for a statement of objective fact of which plaintiff has independent knowledge, and not for a confidential communication. Absent any implications that such disclosure would be injurious to the client, it likewise falls outside the purview of the attorney-client privilege, since the consultation for which the fee was paid remains privileged.

We appreciate the ardent efforts of plaintiff to hold inviolate communications in confidence from his clients. We would support such endeavors with equal zeal were it appropriate. It is not in this case. We therefore hold that the court did not abuse its discretion in compelling discovery.

## III

### *The Discovery Order Did Not Violate the Right of Privacy of Third Party Nonlitigants*

Plaintiff next contends that the disclosure required by the interrogatories constitutes an intrusion into the rights of privacy of the clients who are not parties to this litigation. He states that about 1,000 clients are involved over a 3-year period and that he has already made substantial discovery by furnishing a list of cases attached to his proposed answers to interrogatories.[7] He argues further that defendant should be required to notify plaintiff's clients at defendant's expense of the pending discovery and should disclose only as to those clients who agree in writing. These arguments have no merit.

---

[7]That list of cases has not been included in the petition.

The seminal case recognizing the impact of the California constitutional right of privacy[8] upon discovery proceedings involving third parties not directly involved in civil litigation is *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977]. In that case, plaintiff sued one Barkett to obtain monies due on a promissory note. Barkett claimed the bank had made fraudulent representations, and sought to prove such fraud by discovery of records concerning loan transactions between the bank and third persons. The bank sought a protective order under section 2019, subdivision (b)(1), of the Code of Civil Procedure. Observing that the courts had not yet had the opportunity to fully analyze the constitutional right of privacy, the opinion remarks: "[W]e may safely assume that the right of privacy extends to one's confidential financial affairs as well as to the details of one's personal life." (*Id.* at p. 656.) The court thereupon balanced the interests of civil litigants in obtaining discovery against the right of bank customers to maintain reasonable privacy regarding their financial affairs. As a consequence of this process, the court found such confidential information may be disclosed but required the bank to notify its customers of the nature of the lawsuit so they might be given an opportunity to object to disclosure of such a protective order. (*Ibid.*, pp. 657-658.)

The precept to be drawn is that it is incumbent on the litigant-holder of information to assert the right on behalf of the nonparty who has a protectible right of privacy. Although plaintiff in this case has been untimely in asserting his client's right of privacy, nevertheless the equitable rule would require a court to consider such a claim whenever it is raised so that the nonparty who has a legitimate right to privacy may not be foreclosed of its benefits if he has not previously been forewarned.

In *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55], a hospital custodian was commanded to produce the medical-hospital records of five patients of a doctor who was being investigated for fitness to hold his license. The patients were not parties to the proceeding and their right of privacy was asserted by the hospital custodian of records. The court held that disclosure

---

[8]The right of privacy is found in California Constitution, article I, section 1, which reads as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

of the medical records of a nonlitigant may under some circumstances be permissibly compelled, but not without a showing of "good cause" which was not there demonstrated.

In *Craig* v. *Municipal Court* (1979) 100 Cal.App.3d 69 [161 Cal. Rptr. 19], a defendant in a criminal case sought to show the propensity for violence of an officer when he made arrests. Defendant sought to discover the names of everyone the officer had arrested on similar charges during the preceding two years. The court reversed an order granting discovery, in part by invoking the constitutional right of privacy of those arrested to prevent such disclosure of records officially compiled with or without their consent. The custodian of the records was held to have standing to assert such a right on behalf of the absent arrestees.

These cases, when read in conjunction with a sampling of others which involve litigants, establish that there exist zones of privacy covering sensitive areas of personal information in which the scope of discovery may be diminished or qualified by a protective order fashioned to accommodate the competing values of the individual right to privacy and, as described in *In re Lifschutz* (1970) 2 Cal.3d 415, 432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1], the "important state interest of facilitating the ascertainment of truth in . . . legal proceedings." (See *Cobb* v. *Superior Court* (1979) 99 Cal.App.3d 543 [160 Cal.Rptr. 561] (in which this court discussed the various protective orders available to narrow discoverable financial disclosures); *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766] (holding that a personal injury litigant need only reveal so much of his medical history as is directly relevant); *Morales* v. *Superior Court* (1979) 99 Cal.App.3d 283 [160 Cal.Rptr. 194] (limiting disclosure of plaintiff's extramarital affairs to exclude names, addresses and phone numbers of nonlitigant paramours).)

Recognizing from the cases which have been referred to that the constitutional amendment does not preclude every incursion into individual privacy but that "any such intervention must be justified by a compelling interest" (*White* v. *Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222]), we are convinced that the court was justified in issuing its orders compelling discovery. There is here no improper invasion of any third party's constitutionally protected right of privacy, and hence no abuse of discretion. These interrogatories are not part of a fishing expedition by an outsider seeking to promiscuously and

pervasively dredge up all the contents of the files of plaintiff's clients. (See *People* v. *Doyle* (1977) 77 Cal.App.3d 126 [141 Cal.Rptr. 639].) They were rather narrowly drawn; they seek no information susceptible of reconstructing a "legal profile" of plaintiff's clients based on communications given confidentially. As a practical matter, the expectation of privacy by a client merely as to his identity and the fee charged, vis-à-vis an attorney practicing in the law office which he has consulted, is in most circumstances probably nonexistent.[9] In point of fact, the interrogatories themselves suggest that little in the disclosures would be of a private nature. The cross-complaint seems to reflect that much of the practice related to personal injury and workers' compensation litigants. The interrogatories merely ask for client identification, the final disposition of their cases and the amount of fees awarded. This can be reasonably construed to mean fees awarded by a court, by some administrative agency or as a result of settlements with an adversary in which even more extensive disclosures would have been made than those which are the subjects of the interrogatories. The overriding need of defendant to have this marginally private information as to client identity and fees earned for his legitimate litigation needs far outweighs the minimal intrusion into any surviving right of privacy of the clients. Ample reason for the order is shown by the direct relevance of such information to the issues raised by the respective pleadings.[10]

While we agree with the trial court that discovery is warranted, information of the nature requested should not be used by defendant or his counsel for any purpose beyond the restricted confines of this litigation and should not be imparted to other persons beyond the immediate needs of this controversy. If such a problem should be perceived, plaintiff's remedy would be a motion for a protective order to prevent such dissemination.

---

[9]We recognize that in an exceptional case a client may wish to conceal the very fact that he has sought legal advice, and perhaps even the fee charged, from other legal associates of the office. We need not consider the merits of a claim of privacy made under such circumstances because no intimation exists of such a situation.

[10]A year has passed since the interrogatories were first propounded and the last order of the court. There is no showing that plaintiff advised even a single client that the requisite information was being sought. We must assume plaintiff knew that the burden of notification was his. (*Valley Bank of Nevada* v. *Superior Court, supra*, 15 Cal.3d 652.) Plaintiff's attempt to shift this burden to defendant is partially circular in its reasoning. Defendant does not have the information to do so—it is one of the subject matters of his inquiry. To enlist the court in this project by *in camera* proceedings in which the court would be a conduit for such notification would impose an unnecessary onus on an overburdened court.

The alternative writ of prohibition is ordered discharged; the petition is denied.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied December 17, 1980, and petitioner's application for a hearing by the Supreme Court was denied January 28, 1981.