[Civ. No. 38688. First Dist., Div. One. Sept. 24, 1976.]

HOWARD E. STAMBAUGH, Petitioner, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent;
PACIFIC GAS AND ELECTRIC COMPANY, Real Party in Interest.

## COUNSEL

Geary, Geary, Shea, Pawson & O'Donnell and Michael F. O'Donnell for Petitioner.

No appearance for Respondent.

Charles T. Van Deusen, Noel Kelly, Robert N. Schiff and F. Ronald Laupheimer for Real Party in Interest.

## OPINION

**ELKINGTON, J.**—This original proceeding in mandate concerns the effect of *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226] (hereafter "*Li*"), and Code of Civil Procedure section 877, upon a tortfeasor who has settled a damage claim for a tort alleged to have been jointly committed by him and other tortfeasors.

*Li* abolished California's "*contributory negligence*" defense and replaced it with a "*comparative negligence*" rule.

Section 877 (enacted 1957) deals with the effect of a release given in "good faith" before verdict or judgment to one joint tortfeasor, upon the rights and obligations of the others.

Certain uncontroverted facts of the case follow.

Howard E. Stambaugh, the petitioner of this proceeding, was involved in a motor vehicle accident which resulted in the death of one Carter (hereafter "decedent"). Prior to any action thereon, he settled a wrongful death claim with decedent's heirs by payment of $25,000, the full amount of his insurance coverage. Stambaugh received from the heirs a release from further liability. The release applied to him alone; it did not purport to release any other joint tortfeasor. Decedent's heirs thereafter commenced an action against Pacific Gas and Electric Company (hereafter "P G and E") and other claimed joint tortfeasors, for decedent's wrongful death in relation to the same motor vehicle accident. P G and E cross-complained, bringing Stambaugh into the action as an alleged joint tortfeasor.

The relief sought by P G and E was that the "court determine the extent to which [Stambaugh's] negligence proximately contributed to the death of the decedent Charles C. Carter, and that judgment against said cross-defendant be entered accordingly."

Stambaugh moved for summary judgment, or judgment on the pleadings, in respect of the cross-complaint. On the motion the facts of Stambaugh's settlement with the deceased's heirs and their release to him were established as a matter of law.

The superior court denied Stambaugh's motion. Thereafter, on his petition, we issued an alternative writ of mandate in order to test the validity of the superior court's order.

P G and E contends that *Li* must be construed as holding that each of several contributing joint tortfeasors, whether or not joined as a defendant, is liable *to the plaintiff* in damages, but only in the proportion that his negligence bears to the total negligence (i.e., that of all contributing joint tortfeasors and plaintiff) which proximately caused plaintiff's damages. This necessary apportioning of fault and assignment of liability to each of the joint tortfeasors can only be accomplished, it is urged, by bringing all of them before the court, since they have by virtue

of *Li* become "indispensable parties" to the action according to Code of Civil Procedure section 389. Applying this rationale to the case at bench, P G and E insists that since Stambaugh was not joined as a defendant by the plaintiff heirs, he was properly brought in as a party by its cross-complaint.[1]

I. The contention gives no effect to Code of Civil Procedure section 877.

Section 877 provides:

"Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—(a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors."

Section 877's intent is clear. Where an alleged joint tortfeasor, prior to a judicial determination of his liability, in good faith settles the claim against him, he is forever discharged of further obligation to the claimant, and to his joint tortfeasors, by way of contribution or otherwise. (See *Wouldridge* v. *Zimmerman,* 21 Cal.App.3d 656, 658 [98 Cal.Rptr. 778]; *Halpin* v. *Superior Court,* 14 Cal.App.3d 530, 543-544 [92 Cal.Rptr. 329] [cert. den., 404 U.S. 832 [30 L.Ed.2d 62, 92 S.Ct. 79]]; *Thornton* v. *Luce,* 209 Cal.App.2d 542, 552 [26 Cal.Rptr. 393].)

At least debatably, the release of a joint tortfeasor according to section 877 might, as contended by P G and E in the instant case, place a disproportionate burden upon the nonsettling joint tortfeasors contrary to the rationale of the state's contribution statutes. (See generally Code Civ. Proc., §§ 875-880.) ■ But section 877 gives expression to another strong policy of our law, the policy that settlement of litigation should be encouraged.

[1]P G and E disclaims any purpose "to seek *indemnity or contribution,* but . . . rather an effort to have the extent of its liability determined by a finder of fact in order that it not be required to pay any more of the judgment than is coextensive with the degree of fault attributed to it." (Italics added.)

" 'The law wisely favors settlements, . . .' " (*Potter* v. *Pacific Coast Lumber Co.*, 37 Cal.2d 592, 602 [234 P.2d 16]; and see *People* ex rel. *Dept. Pub. Wks.* v. *Douglas*, 15 Cal.App.3d 814, 820 [93 Cal.Rptr. 644]; *Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 696 [319 P.2d 69]; *Cilibrasi* v. *Reiter*, 103 Cal.App.2d 397, 400 [229 P.2d 394]; *Lamb* v. *Herndon*, 97 Cal.App. 193, 203 [275 P. 503].) "[I]t is the policy of the law to discourage litigation and to favor compromises of doubtful rights and controversies, made either in or out of court." (*Hamilton* v. *Oakland School Dist.*, 219 Cal. 322, 329 [26 P.2d 296]; see also *Central Basin etc. Wat. Dist.* v. *Fossette*, 235 Cal.App.2d 689, 705 [45 Cal.Rptr. 651].) Settlement agreements " 'are highly favored as productive of peace and goodwill in the community, and reducing the expense and persistency of litigation.' " (*McClure* v. *McClure*, 100 Cal. 339, 343 [34 P. 822]; see also *Estate of Johanson*, 62 Cal.App.2d 41, 56 [144 P.2d 72].) Indeed, it has been said that a major goal of section 877 is the "encouragement of settlements." (*Insurance Co. of North America* v. *United States Fire Ins. Co.*, 34 Cal.App.3d 391, 396 [110 Cal.Rptr. 48]; *River Garden Farms, Inc.* v. *Superior Court*, 26 Cal.App.3d 986, 993 [103 Cal.Rptr. 498].)

Few things would be better calculated to frustrate this policy, and to discourage settlement of disputed tort claims, than knowledge that such a settlement lacked finality and would but lead to further litigation with one's joint tortfeasors, and perhaps further liability.

■ Our close analysis of *Li* discloses no purpose to modify the rule so clearly announced by section 877. We therefore declare that this statute continues to state the law of California.

II. We are also, as indicated, asked by P G and E to interpret *Li* as holding that each of several contributing joint tortfeasors, whether or not joined as a defendant, is liable to the plaintiff in damages, but only in the proportion that his negligence bears to the total negligence (i.e., that of all contributing joint tortfeasors and plaintiff) which proximately caused plaintiff's damages.

Such a consideration by us would affect the rights of the plaintiff and other alleged joint tortfeasors of the action below who are not made parties to this proceeding in mandate. And we find a resolution of the

point unnecessary to our disposition of the proceeding. We therefore decline to elaborate or construe the holding of *Li*.[2]

III. Our discussion of part I above disposes of the contention that by virtue of *Li,* Stambaugh has become an indispensable party to the action according to Code of Civil Procedure section 389.

IV. ■■■ P G and E contends that, irrespective of *Li,* Stambaugh was properly brought into the action because the "good faith" of his settlement with the plaintiff heirs and his release, was one of the issues therein. The contention is founded principally upon a holding of *River Garden Farms, Inc.* v. *Superior Court, supra,* 26 Cal.App.3d 986.

In *River Garden Farms, Inc.* v. *Superior Court, supra,* two children made claims against several alleged joint tortfeasors for damages for their own personal injuries, and for the wrongful death of their parents. Three of the defendants settled the claims for a total of $1,290,000. By agreement, which was approved by the trial court without the knowledge of the remaining group of defendants, the settlements were apportioned $490,000 toward the personal injury damages and $800,000 toward the wrongful death claims. Learning of this apportionment the remaining defendants sought, and were granted, an alternative writ of mandate by the Court of Appeal. They contended (p. 992) that the "allocation of a disproportionately large share of the settlements to the wrongful death claims ha[d] isolated petitioner [*River Garden Farms, Inc.*] as the sole target for potentially large personal injury judgments which it will bear alone, without contribution and with credit only for the relatively minor share of the settlements allocated to the personal injury claims." It was argued that the settlements were invalid because of the "good faith" requirement of section 877.

Because the petitioners (the remaining defendants) had sought no relief in the superior court, the Court of Appeal denied mandate. But in its opinion the court nevertheless discussed the broad issues involved. It concluded that in a proper case a "nonsettling tortfeasor has a civil claim

---

[2]It is noted that P G and E's contention is contrary to the interpretation given *Li* by the highly respected Committee on Standard Jury Instructions of the Superior Court of Los Angeles County which has developed and recommended jury instructions. (See Cal. Jury Instns., Civ. - BAJI (cum. pocket pt. for 5th rev. ed. 1975) Nos. 14.90-14.96.)

Even in those jurisdictions which have adopted "pure" comparative negligence, the settling tortfeasor is not a necessary party. (See *Pierringer* v. *Hoger* (1963) 21 Wis.2d 182, 191-192 [124 N.W.2d 106, 111-112]; *Nebben* v. *Kosmalski* (Minn. 1976) 239 N.W.2d 234, 236, fn. 1; *Fietzer* v. *Ford Motor Company* (E.D.Wis. 1974) 383 F.Supp. 33, 35-36.)

for damages against the claimant who exercised bad faith," and that such an "issue may be litigated within the framework of the claimant's tort suit" (26 Cal.App.3d, pp. 1001, 1002). It made no decision whether the allocation in question "violated the claimants' duty of good faith [since good] or bad faith is a question of fact in each case" (p. 998). And since the petitioners did not "charge the settling defendants with lack of good faith [the court did] not inquire whether [they might be brought] into the lawsuit as new parties defendant" (p. 1002).

A more recent case on the subject, not cited by the parties in their briefs, is *Lareau* v. *Southern Pac. Transportation Co.* (1975) 44 Cal.App.3d 783 [118 Cal.Rptr. 837]; its factual context and legal issues were strikingly similar to those of *River Garden Farms, Inc.* v. *Superior Court, supra.* The court there concluded "from the record before us that bad faith cannot be ruled out as a matter of law and that Southern Pacific [the complaining joint tortfeasor] should be permitted to file a separate action against plaintiffs and settling defendants to determine the issue of good faith and the amount of damages in the event of a finding in favor of [against?] Southern Pacific on the issue of liability." (P. 799.)

We have heretofore pointed out the policy of the law favoring settlement of litigation. ■ Except in rare cases of collusion or bad faith, such as were claimed in *River Garden Farms, Inc.* v. *Superior Court, supra,* 26 Cal.App.3d 986, and *Lareau* v. *Southern Pac. Transportation Co., supra,* 44 Cal.App.3d 783, a joint tortfeasor should be permitted to negotiate settlement of an adverse claim according to his own best interests, whether for his financial advantage, or for the purchase of peace and quiet, or otherwise. His good faith will not be determined by the proportion his settlement bears to the damages of the claimant. For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote. And even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor.

We hesitate, as did the court in *River Garden Farms, Inc.* v. *Superior Court, supra,* to bound the area of "good faith." As said by that court: "When profit is involved, the ingenuity of man spawns limitless varieties of unfairness. Thus, formulation of a precise definition of good faith is neither possible nor practicable." (26 Cal.App.3d, p. 997.) But we opine that it would be a rare case indeed, where, as here, a joint tortfeasor who

was the immediate causative agent of a claimant's injuries, who settles for the full amount of his insurance coverage, may reasonably be charged with lack of good faith under section 877. And it must be noted that in such a case all joint tortfeasors against whom a judgment is finally entered will be the beneficiaries of such a settlement, for its amount will be deducted from the claimant's damages as found by the trier of fact. (See Code Civ. Proc., § 877, subd. (a); *Winzler & Kelly* v. *Superior Court,* 48 Cal.App.3d 385, 392 [122 Cal.Rptr. 259].)

 In the case at bench the record establishes only that Stambaugh, one of several alleged joint tortfeasors, settled the tort claim against him for $25,000, the full amount of his insurance coverage. It contains no evidence of Stambaugh's bad faith or even a charge of such bad faith. It follows that, contrary to P G and E's contention, the good faith of Stambaugh's settlement was not at issue in the superior court proceedings.

IV. P G and E makes a further contention which was not raised in the superior court. It is urged that the cross-complaint properly brought Stambaugh into the action in order that P G and E might have "necessary discovery, including whether [Stambaugh's] settlement was negotiated in 'good faith.'"

But obviously one must have, *or at least assert,* a cause of action against another before he will be permitted to bring that party into an action by way of cross-complaint, or otherwise. The court's processes may not be used to bring a party into an action simply in order to determine, by discovery, whether a cause of action against him actually does exist.

The superior court accordingly erred in denying Stambaugh's motion for summary judgment or judgment on the pleadings.

The peremptory writ will issue.

Sims, Acting P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.