[Civ. No. 5871. Fifth Dist. Apr. 8, 1981.]

RICHARD JAMES DOMPELING et al., Petitioners, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY,
Respondent;
ROBERT R. WEICHERT et al., Real Parties in Interest.

800

COUNSEL

Low, Ball & Lynch, David B. Lynch and James D. Miller for Petitioners.

No appearance for Respondent.

Don E. Bailey and Albert E. Cronin, Jr., for Real Parties in Interest.

OPINION

HANSON (P. D.), J.—On February 14, 1977, in the fog, petitioner Richard Dompeling was driving a Peterbilt truck on Faith Home Road at a speed of about 40 miles an hour[1] when he came upon a Chatom Union School District (Chatom) bus stopped partially off the road.

There is disagreement as to whether the lights and turn signal of the bus were on. In his deposition, Richard Dompeling stated that he tried

---

[1] Page 39 of exhibit D to answer, the portion of the deposition of Richard Dompeling which Chatom alleges contains an admission by Dompeling that he was driving 40 miles per hour at the time of the accident, appears to have been inadvertently omitted from the record.

to miss the bus and did not see plaintiff Robert R. Weichert's (Weichert) Honda Civic automobile until he swerved. The truck hit the small car and plaintiff, then 24 years old, was injured seriously, perhaps permanently.

Plaintiff filed an action for damages for personal injuries in Stanislaus County Superior Court, naming as defendants Richard James Dompeling and John Dompeling, individually and doing business as Dompeling Livestock Transport, and Chatom Union School District. Chatom filed a cross-complaint for partial indemnity against Dompeling as did the Dompelings against Chatom.

Plaintiff's settlement conference statement, attached as exhibit E to the answer of real party Chatom, and prepared on February 29, 1980, indicates that plaintiff's demand for settlement was $325,000.

Petitioners allege that they entered into a settlement agreement with plaintiff Weichert in June 1980. The covenant not to execute or enforce judgment provides for payment by petitioners' insurance carrier of the policy limits of $100,000, and possible payment by petitioners up to $10,000 above the $100,000 on a sliding scale depending upon plaintiff's recovery from Chatom. The settlement was initially conditioned on court approval. (See Code Civ. Proc., §§ 877, 877.5.)

However, the trial court denied petitioners' motions for approval of the settlement agreement as a settlement in good faith and for entry of judgment for petitioners on Chatom's cross-complaint for indemnity. (Code Civ. Proc., § 877; see *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899].) Petitioners did not seek review of the trial court's denial of the motion for summary judgment on the cross-complaint. The trial court granted Chatom's motion for a separate trial, to precede the personal injury action, on the issue of whether the settlement was entered into in good faith.

On August 22, 1980, after the settlement with present petitioners, plaintiff served a statutory offer to compromise of $150,000 on Chatom. (Exhibit G to answer; Code Civ. Proc., § 998.)

At the deposition of Richard Dompeling, Chatom inquired exhaustively into petitioner's personal and business assets. Mr. Dompeling, on instructions of counsel, refused to answer on the ground that such infor-

mation was not discoverable under California law and was irrelevant to a claim of bad faith settlement.

Chatom moved to compel answers and the trial court ordered petitioner to answer the deposition questions.[2] Chatom renoticed Richard Dompeling's deposition; after the notice to appear was served, petitioners filed this proceeding seeking a writ of mandate ordering the trial court to vacate its order granting Chatom's motion to compel answers to financial questions. A conditional stay order was filed by this court[3] and Chatom filed a petition for rehearing; upon reconsideration the petition for writ of mandate was denied.

Petitioners sought a hearing in the Supreme Court which was granted on September 24, 1980, and the case was retransferred to this court for a hearing on the merits.[4]

■ Petitioners contend that the trial court abused its discretion in ordering discovery of the Dompeling finances. We agree.

Petitioners argue that a defendant's financial status is admissible and therefore discoverable only in cases where punitive damages are alleged. (*Coy* v. *Superior Court* (1962) 58 Cal.2d. 210 [23 Cal.Rptr. 393, 373

[2]The trial court's minute order of August 13, 1980, stated: "This matter having regularly come before the Court and having been taken under submission, IT IS ORDERED as follows: [¶] Defendant DOMPELING, as an individual and doing business as Dompeling Livestock Company, shall answer the deposition questions relating to the financial condition of the aforementioned Defendant. [¶] The question of admissability [*sic*] of said answers into evidence is deferred until time of trial. [¶] The Deposition of Richard J. Dompeling dated July 30, 1980, is Ordered filed."

[3]On August 25, 1980, this court filed an order stating: "Upon the condition that petitioners file in respondent court a written waiver of their right to assert at trial that they entered into the settlement agreement in good faith because their financial resources and/or condition supports or justifies the settlement agreement or prevents larger settlement payments, enforcement of the August 13, 1980, order of the Superior Court of Stanislaus County entered in action No. 148234 insofar as said order directs defendant Richard Dompeling to answer deposition questions relating to the financial condition of himself and the Dompeling Livestock Company is stayed pending determination of this petition or further order of this court."

[4]The California Supreme Court ordered that, "The petition for hearing filed by petitioners Dompeling et al., is granted and the matter transferred to this court and retransferred to the Court of Appeal, Fifth District, with directions to issue an alternative writ of mandate to be heard before that court when the matter is ordered on calendar. (See *Doak* v. *Superior Court* (1968) 257 Cal.App.2d 825.) [¶] The petition for hearing filed by real party in interest Weichert is denied. The application of said party for an order directing respondent court to restore the action to its calendar is transferred to the Court of Appeal. [¶] The answer and purported petition for original writ of mandate filed by real party in interest Chatom Union School District is ordered stricken."

P.2d 457, 9 A.L.R.3d 678]; *Doak* v. *Superior Court* (1968) 257 Cal. App.2d 825 [65 Cal.Rptr. 193, 27 A.L.R.3d 1362].) ■ If the only possible relevance of a defendant's finances is to defendant's ability to respond in damages, authorities hold that defendant's *personal* finances, as opposed to the existence and amount of liability insurance, are not discoverable. (*Ibid.*; see Cal. Civil Discovery Practice (Cont.Ed.Bar 1975) § 1.32, p. 27; Annot., Pretrial Discovery of Defendant's Financial Worth on Issue of Damages (1969) 27 A.L.R.3d 1375.) If relevant to another issue in the lawsuit, however, financial information has been held to be discoverable. (See *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977]; *Willis* v. *Superior Court* (1980) 112 Cal.App.3d 277 [169 Cal.Rptr. 301].)

Chatom reasons that the financial information is relevant to Chatom's claim that the settlement between Weichert and the Dompelings was in bad faith, and therefore Chatom is entitled to discovery.

The Stanislaus County Superior Court, in denying petitioners' motion for summary judgment and setting the question for trial before the personal injury portion of the case, determined that there is a triable issue of fact with regard to the fairness of the settlement. As stated above, there was no petition for review of the court's denial of the summary judgment.

Chatom urges that the Dompelings are more culpable than Chatom as the cause of the accident, that the damages are substantial and that settlement for $100,000 to $110,000 is therefore suspect. There are very few cases discussing bad faith in this context and none fully defining the circumstances that may constitute bad faith. (See *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 996-997 [103 Cal.Rptr. 498]; *Lareau* v. *Southern Pac. Transportation Co.* (1975) 44 Cal.App.3d 783 [118 Cal.Rptr. 837]; *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231 [132 Cal.Rptr. 843]; *Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434 [163 Cal.Rptr. 47].) While the cases cited here may intimate that a disproportionately low settlement may be a settlement in bad faith, we believe that their definition of the concept is not so simple. Furthermore, the cases, except *Fisher*, were decided before *American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d 578, which held in applying comparative negligence principles to indemnity among joint tortfeasors that a tortfeasor who settles with the plaintiff in good faith is discharged from any claim for comparative indemnity as well as contribution, and that "a plaintiff's

recovery from nonsettling tortfeasors should be diminished only by the amount that the plaintiff has actually recovered in a good faith settlement, rather than by an amount measured by the settling tortfeasor's proportionate responsibility for the injury." (*Id.*, at pp. 603, 604.)

Section 877 of the Code of Civil Procedure reflects a strong policy in favor of settlement. (*American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d at pp. 603-604, 607, fn. 9.) In *River Garden Farms, Inc.* v. *Superior Court, supra*, 26 Cal.App.3d 986, authored by Justice Friedman, a unanimous court interpreted the "good faith" clause of Code of Civil Procedure section 877[5] to provide a cause of action for damages to a nonsettling defendant against other parties who settle in bad faith. "Collusion" between settling parties was identified in *River Garden Farms, Inc.*, as a major element of bad faith. "Any negotiated settlement involves cooperation, but not necessarily collusion. It becomes collusive when it is aimed to injure the interests of an absent tortfeasor. Although many kinds of collusive injury are possible, the most obvious and frequent is that created by an unreasonably cheap settlement. Applied *pro tanto* to the ultimate judgment, such a settlement contributes little toward equitable—even though unequal—sharing. As we noted earlier, unreasonably low settlements with the other tortfeasors and the fear of a large unshared judgment may propel the last remaining defendant into a settlement exceeding the plaintiff's remaining damages and transcending that defendant's equitable share. Prevention of collusion is but a means to the end of preventing unreasonably low settlements which prejudice a nonparticipating tortfeasor. The price of a settlement is the prime badge of its good or bad faith.

". . . . . . . . . . . . . . . . .

"[However,] [l]ack of good faith encompasses many kinds of behavior. It may characterize one or both sides to a settlement. When profit is involved, the ingenuity of man spawns limitless varieties of unfair-

---

[5]Code of Civil Procedure section 877 reads as follows: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given *in good faith* before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort— [¶] (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and [¶] (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors." (Italics added.)

ness. Thus, formulation of a precise definition of good faith is neither possible nor practicable. The Legislature has here incorporated by reference the general equitable principle of contribution law which frowns on unfair settlements, including those which are so poorly related to the value of the case as to impose a potentially disproportionate cost on the defendant ultimately selected for suit." (*River Garden Farms, Inc.* v. *Superior Court, supra*, 26 Cal.3d 986, 996-997.)

■ The cases emphasize that the question of good or bad faith is a question of fact and suggest the possible relevance of a settling party's financial status. In *Lareau* v. *Southern Pac. Transportation Co., supra*, 44 Cal.App.3d 783, 798, the court stated: "The conduct and motivations of all parties in regard to settlement will be in question." In dicta, *Fisher* v. *Superior Court, supra*, 103 Cal.App.3d 434, 444, specifically mentions the wealth of the settling defendant as evidence that may be admissible on trial of the good faith issue. In *Stambaugh* v. *Superior Court, supra*, 62 Cal.App.3d 231, 238, the court said: "... even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor."

However, in the *Stambaugh* case, the court held that no colorable claim of bad faith had been shown and the trial court was in error in denying the settling tortfeasor's motion for summary judgment on the cross-complaint, stating: "Except in rare cases of collusion or bad faith, ..., *a joint tortfeasor should be permitted to negotiate settlement of an adverse claim according to his own best interests,* whether for his financial advantage, or for the purchase of peace and quiet, or otherwise. His good faith will not be determined by the proportion his settlement bears to the damages of the claimant. For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote." (*Stambaugh* v. *Superior Court, supra*, at pp. 238-239; italics added.)

■ The existence of the sliding scale recovery agreement, such as the agreement spanning $10,000 which has so alarmed Chatom as a sinister part of the Weichert-Dompeling settlement, is recognized by statute. The Legislature, by Statutes 1977, chapter 568, section 1, page 1798, added section 877.5 to the Code of Civil Procedure: "(a) Where an agreement or covenant is made which provides for a sliding scale re-

covery agreement between one or more, but not all, alleged defendant tortfeasors and the plaintiff or plaintiffs:

"(1) The parties entering into any such agreement or covenant shall promptly inform the court in which the action is pending of the existence of the agreement or covenant and its terms and provisions; and

"(2) If the action is tried before a jury, and a defendant party to the agreement is a witness, the court shall, upon motion of a party, disclose to the jury the existence and content of the agreement or covenant, unless the court finds that such disclosure will create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

"The jury disclosure herein required shall be no more than necessary to be sure that the jury understands (1) the essential nature of the agreement, but not including the amount paid, or any contingency, and (2) the possibility that the agreement may bias the testimony of the alleged tortfeasor or tortfeasors who entered into the agreement.

"(b) As used in this section a 'sliding scale recovery agreement' means an agreement or covenant between a plaintiff or plaintiffs and one or more, but not all, alleged tortfeasor defendants, where the agreement limits the liability of the agreeing tortfeasor defendants to an amount which is dependent upon the amount of recovery which the plaintiff is able to recover from the nonagreeing defendant or defendants. This includes, but is not limited to, agreements within the scope of Section 877, and agreements in the form of a loan from the agreeing tortfeasor defendant to the plaintiff or plaintiffs which is repayable in whole or in part from the recovery against the nonagreeing tortfeasor defendant."

This statute provides protection to nonsettling defendants against the concern expressed by Chatom that the jury might be "unfairly influenced" as a result of the settling defendants' conduct of their defense. The sliding scale recovery agreement does not in itself constitute a settlement in bad faith.

Justice Friedman in *River Garden Farms, Inc.*, spoke of collusion and described the most "obvious and frequent" type of collusive injury as that "created by an unreasonably cheap settlement." (26 Cal.App.3d at p. 996.) This settlement of at least $100,000 is not an "unreasonably cheap settlement" on its face; plaintiff's total settlement request was $325,000 and the evidence in the record indicates that liability is not attributable solely to the Dompelings.

There is an obvious tension between California's well recognized public policy to promote the settlement of claims and a policy permitting such settlements to be attacked as unfair. In this case, the problem of accommodating the competing policies is presented in the context of a discovery motion.

■ We recognize that "... discovery in civil litigation is permissible if the information sought is 'not privileged,' is 'relevant to the subject matter involved in the pending action,' and is 'reasonably calculated to lead to the discovery of admissible evidence.' (Code Civ. Proc., 2016, subd. (b).)" (*Willis v. Superior Court, supra,* 112 Cal.App.3d 277, 289.) Also, we are aware that ordinarily the standard should be applied liberally and doubts resolved in favor of permitting discovery. (*Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2 Cal.3d 161, 173 [84 Cal. Rptr. 718, 465 P.2d 854].) "Information sought through discovery is relevant to the subject matter if it relates to a claim or defense of the examining party ... [and includes] factual information that supports allegations in the pleadings, ... [citations]. This is true even though a party has the burden of proof on the issues on which he is seeking discovery." (Cal. Civil Discovery Practice (Cont.Ed.Bar 1975) § 1.30, p. 25.)

■ While we appreciate that personal financial information falls within the zone of privacy protected by article I, section 1 of the California Constitution,[6] we cannot say, as Dompelings urge, that discovery of such information is completely precluded even if the information is relevant to the subject matter in issue. (*Valley Bank of Nevada v. Superior Court, supra,* 15 Cal.3d 652, 656-658; *Willis v. Superior Court, supra,* 112 Cal.App.3d 277, 297; *Cobb v. Superior Court* (1979) 99 Cal.App.3d 543 [160 Cal.Rptr. 561].)

Where objection is made to discovery of such sensitive information in the trial court, the court must carefully weigh the competing factors in fashioning an order, considering: "... the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections urged by the party resisting disclosure,

---

[6]California Constitution, article I, section 1, provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

and ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances.

" .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"[W]here possible, the courts should impose partial limitations rather than outright denial of discovery; ..." (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 382-383 [15 Cal.Rptr. 90, 364 P.2d 266].)

However, if nonsettling defendants may depose defendants who have settled regarding their personal assets and finances in every case an obvious result will be to discourage those seeking to settle personal injury actions. Ours is an adversary system; one who settles before trial expects to pay less than would be required if after trial the verdict were not in his favor. This is a moving factor in personal injury settlements, which afford both "peace and quiet" to defendant and needed relief without delay to an injured plaintiff. (See *Stambaugh* v. *Superior Court, supra,* 62 Cal.App.3d 231, 238.) "'The law wisely favors settlements, ...'" (*Potter* v. *Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 602 [234 P.2d 16]; *Fisher* v. *Superior Court, supra,* 103 Cal.App.3d 434, 441.)

■ Bad faith is not established by a showing that a settling defendant paid less than his theoretical proportionate or fair share of the value of plaintiff's case. A settlement always removes the settling defendant from the action; this necessarily results in a possibility that the remaining defendants will suffer judgment greater in amount than if there had been no settlement.

■ Where plaintiff settles with fewer than all defendants, the defendants are clearly adverse parties. A settling defendant does not owe a legal duty to adverse parties, the nonsettling defendants, to pay the plaintiff more so that the adverse parties may pay the plaintiff less. Plaintiff and defendants are also adverse parties; the plaintiff does not owe a legal duty to the nonsettling defendants to seek more from a settling defendant so that the nonsettling defendants may pay less.

The settling parties owe the nonsettling defendants a legal duty to refrain from tortious or other wrongful conduct; absent conduct violative of such duty, the settling parties may act to further their respective in-

terests without regard to the effect of their settlement upon other defendants.[7]

Practical considerations support our conclusion that bad faith is not shown by the settling defendant's failure to pay his theoretical fair share of plaintiff's damage; that determination requires deciding the amount of plaintiff's damage and who is liable under comparative fault principles. These issues, ordinarily determined at trial, would have to be tried at the hearing to decide whether a settlement was made in good faith. In fact, the pretrial hearing would encompass issues beyond proportionate liability of the parties, such as the subjective motives for settlement, the reason plaintiff accepted less than the settling defendant's theoretical fair share, or the ability of the settling defendant to pay more.

The definition of bad faith articulated here substantially narrows the scope of the pretrial hearing upon the issue of good faith settlement.

To support Chatom's theory that the settlement was in bad faith because it was proportionately low compared to the Dompelings' true liability, Chatom seeks information about the Dompelings' finances to prove that they could have paid more in settlement with plaintiff.

■ We reject this theory of materiality for the reasons discussed above, and hold that Chatom has failed on this record to show that the financial information it seeks is itself relevant or reasonably calculated to lead to the discovery of evidence relevant to the bad faith claim. Respondent court abused its discretion in concluding otherwise. However, we do not decide the discoverability of financial information in a different factual situation and on a different theory of materiality, for example, where a settlement is grossly disproportionate on its face and the information is sought as a step in establishing a corrupt agreement between the settling defendant and the plaintiff.

Let a writ of mandate issue directing the Superior Court of Stanislaus County to vacate its order granting Chatom Union School District's motion to compel answers and to enter its order denying the motion and setting the issue of the good faith of the settlement for court hearing pursuant to Code of Civil Procedure section 877.6.

---

[7] An agreement between the settling defendant and plaintiff, in settling for a disproportionate amount, to aid plaintiff's case by committing perjury would be such wrongful conduct and a corrupt agreement.

Brown, (G. A.), P. J., concurred.

ZENOVICH, J.—Although the majority is to be commended for its attempt to clarify the concept of a "bad faith settlement," I must respectfully dissent from other aspects of the opinion.

It is critical to remember that the present controversy arises during the stage of litigation commonly known as *discovery*. Importantly, the majority acknowledges that litigants are to be given great leeway in discovery, since restrictive standards of relevancy will retard efforts to pursue potentially admissible evidence. As this court recently stated in *Morales v. Superior Court* (1979) 99 Cal.App.3d 283, 288 [160 Cal. Rptr. 194], "'. . . relevancy at trial and relevancy for purposes of discovery are two different things. "An appellate court cannot reverse a trial court's grant of discovery under a 'relevancy' attack *unless it concludes that the answers sought by a given line of questioning cannot as a reasonable possibility lead to the discovery of admissible evidence or be helpful in preparation for trial.*" [Citations.]'" (Italics added, quoting *Fults v. Superior Court* (1979) 88 Cal.App.3d 899, 902 [152 Cal.Rptr. 210].)

In line with the above principle, the majority states that "Chatom has failed on this record to show that the financial information it seeks is itself relevant or reasonably calculated to lead to the discovery of evidence relevant to the bad faith claim" because "[b]ad faith is not established by a showing that a settling defendant paid less than his theoretical proportionate or fair share of the value of plaintiff's case." I cannot join in this conclusion because of its effect upon litigants' attempts to gain evidence on the bad faith issue.

In *Fisher v. Superior Court* (1980) 103 Cal.App.3d 434, 445 [163 Cal.Rptr. 47], the Second District observed: "'*The price of a settlement is [said to be] the prime badge of its good or bad faith.*'" (See *River Garden [Farms, Inc. v. Superior Court* (1972) 26 Cal.App.3d 986] at p. 996.) *But that price is not considered in a vacuum.* When the insurance company for a settling defendant pays its total available policy limits, that is very strong evidence of a 'good faith' settlement, absent evidence of collusion or grossly inappropriate allocation or apportionment of the settlement proceeds to injure the nonsettling alleged tortfeasors." (Italics added.) *Fisher* and the lead opinion here correctly ascertain that the price of settlement *alone* will not usually establish bad faith. Instead, the price of the settlement must be coupled with oth-

er factors—personal animus towards nonsettling alleged tortfeasors or destruction of third party litigation between alleged tortfeasors—in order to establish a "bad faith" settlement. Nevertheless, it is abundantly clear that the price of settlement and the financial ability of the settling defendant are *relevant factors* in the bad faith calculation. Although these two factors alone may not establish bad faith when the issue is litigated on the merits, such considerations—coupled with other proof —can lead to an inference that a settlement would be unfair to other alleged tortfeasors. To this extent, both *Fisher* and *River Garden* recognize that price of settlement is *a factor* which aids a party attempting to establish bad faith. The assets and wealth of a settling defendant (like Dompeling) are clearly relevant—i.e., the evidence does relate to a claim upon which the party attempting to show bad faith has the burden of proof. Dompeling's financial makeup—when coupled with the sliding scale recovery agreement and the severity of Weichert's injuries—might allow the trial court to later draw an inference of bad faith at the evidentiary hearing on the issue. Since Chatom may have possession of or later pursue discovery of internal memoranda or insurance company correspondence indicative of personal animus on Dompeling's part, it is improvident to deny discovery of financial information which has relevance to the eventual establishment of a bad faith claim.

In my opinion, the majority undercuts the liberal stance which has been traditionally accorded to discovery requests. For purposes of illustration, I offer the following example. In a negligence action, a plaintiff would rarely be denied a request to discover a safety manual adopted and used by an alleged defendant corporation in its daily operation. Such evidence is at least relevant on the *standard-of-care* element of the cause of action. Nevertheless, the proof (on its face) does not have relevance to the *breach* or *proximate causation* elements of a negligence action. It seems highly unlikely that a trial court would deny a plaintiff's request for production of the safety manual merely because it relates to the standard-of-care element rather than to *all* the elements of a negligence action. Although settlement price "in a vacuum" may not be tantamount to bad faith, it is likewise premature to deny Chatom's motion to compel evidence of Dompeling's financial wealth. Chatom still has the opportunity to garner *other* proof which *may* establish bad faith—once it is coupled with evidence of Dompeling's financial worth, the sliding scale agreement, and the $100,000-$110,000 price of settlement. As in the hypothetical negligence action, Chatom should not be foreclosed from gaining Dompeling's answers merely be-

cause it is pursuing inquiry into *one* of the relevant factors relating to bad faith settlements.

Again, I commend my colleagues for attempting to provide elucidation on the "bad faith" concept. "Bad faith" in this context has a misleading linguistic connotation. Most settlements are made for bona fide reasons, such as avoidance of litigation expenses, convenience of the parties, etc. I believe that "bad faith" settlements are those types of settlements which are so unfair to some of the litigants that courts refuse to give them enforcement. (See, e.g., *Commercial Union Insurance Co.* v. *Ford Motor Co.* (9th Cir. 1981) 640 F.2d 210 (settlement between plaintiff and one tortfeasor should not be allowed to impede third party litigation between settling tortfeasor and nonsettling tortfeasor).) The majority opinion is sound in this respect. However, I do not feel Chatom can be denied its right to pursue discovery of Dompeling's financial worth. Chatom may not be able to prove bad faith when the merits are reached; however, this should not foreclose it from pursuing information about the assets and wealth of Dompeling. This information is relevant to a resolution of and has a nexus to the bad faith issue. To this extent, I depart company from the analysis set forth by my colleagues.

Accordingly, I do not believe the writ grant is justified in the present case. This court is reviewing the decision of the judge below and deciding whether he abused his discretion in granting the motion to compel. Chatom should be entitled to show that the Dompeling-Weichert agreement was suspect, given the price of settlement, the potential liability of Dompeling, and the financial worth of Dompeling. It seems clear that a disproportionate settlement, combined with evidence showing that the settling defendant was primarily liable and solvent, raises the spectre that the settlement was made in less than good faith. In fact, the majority acknowledge this idea by noting, "... we do not decide the discoverability of financial information in a different factual situation and on a *different theory of materiality*, for example, where a settlement is grossly disproportionate on its face and the information is sought as a step in establishing a corrupt agreement between the settling defendant and the plaintiff." (Italics added.) The court below obviously felt that the information was *material* because Chatom might develop the issue under a *different* theory than the one initially articulated. Since the financial information about Dompeling would indeed be *material* and the court so decided, there was no abuse of discretion in compelling answers. The decision of the lower court was correct—

although not necessarily for the reasons articulated by Chatom—and should be sustained by this court.*

Finally, it is interesting to note that the "bad faith" definition related in the lead opinion was never before the court below. It is hard for me to conceptualize how a court can abuse its discretion at a discovery proceeding when the law had not shown why financial information alone was irrelevant—i.e., because it is merely a challenge to the share paid out by a settling defendant and, therefore, not equivalent to bad faith. Characterizing this as an abuse of discretion unfairly makes trial courts speculate about how an appellate court will define a legal concept at a later point in time.

For the foregoing reasons, I would deny the present writ petition with directions for the court below to frame an appropriate protective order for the protection of petitioners. (Cf. *Martin* v. *Superior Court* (1980) 110 Cal.App.3d 391, 394-395 [167 Cal.Rptr. 811]; *Cobb* v. *Superior Court* (1979) 99 Cal.App.3d 543, 549-552 [160 Cal.Rptr. 561]; *Richards* v. *Superior Court* (1978) 86 Cal.App.3d 265, 269-272 [150 Cal.Rptr. 77].)

A petition for a rehearing was denied May 7, 1981, and the petition of real party in interest Chatom Union School District for a hearing by the Supreme Court was denied June 10, 1981.

---

*This is not to say that the $100,000-$110,000 settlement was inherently unfair. The trial court did not abuse its discretion in allowing Chatom to pursue evidence which might establish bad faith at a subsequent hearing.