**VERTECS CORPORATION, Appellant,**

v.

**FIBERCHEM, INC., Appellee.**

No. 6718.

Supreme Court of Alaska.

Sept. 16, 1983.

See also 661 P.2d 619.

Robert J. Dickson, Atkinson, Conway, Bell & Gagnon, Anchorage, for appellant.

David A. Shaw, Tewell, Thorpe & Findlay, Inc., P.S., Seattle, and Richard N. Sutliff, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and HODGES, Judge.*

OPINION

MATTHEWS, Justice.

In 1970, the City of Yakutat contracted for the construction of a cold storage plant

---

* Hodges, Superior Court Judge, sitting by assignment made pursuant to Article IV, Section 16, of the Constitution of Alaska.

at Yakutat. In order to arrest condensation problems, Vertecs, Inc. installed foam insulation on the interior of the roof of the plant, pursuant to subcontract from the general contractor on the project, Chris Berg, Inc. Vertecs purchased the foam used on the project from Reichhold Chemicals, Inc. and Fiberchem, Inc. After completion, the plant was leased to various tenants. On May 13, 1977, while occupied by the Yakutat Fishermen's Cooperative, the plant was substantially destroyed by a fire that followed the explosion of the plant's boiler.[1] The fire damage was allegedly increased when the flames ensuing from the explosion ignited the foam insulation on the plant's roof.

On May 11, 1979, co-plaintiffs City of Yakutat and Yakutat Fishermen's Cooperative filed an amended complaint in the superior court, Third Judicial District, naming fifteen defendants, including Vertecs and Reichhold. The complaint alleged that Vertecs had negligently applied the foam insulation and negligently failed to warn plaintiffs of the foam's flammability. The plaintiffs never sued Fiberchem.

On April 13, 1981, Vertecs filed a third-party claim against Fiberchem seeking contribution and indemnity for any liability it might have to the plaintiffs. Vertecs alleged six grounds for indemnity from Fiberchem, including strict tort liability, breach of warranty, negligence, negligent and intentional misrepresentation, failure to disclose the dangerous characteristics of foam, and active-passive indemnity.

Fiberchem and Mission Insurance Company, its liability insurer, settled with the plaintiffs on November 20, 1981 for the sum of $75,000. The settlement was conditional upon the success of Fiberchem's motion to dismiss Vertecs' third-party claim.

On November 19, 1981, Fiberchem moved to dismiss Vertecs' third-party claim, alleging that its settlement with the plaintiffs immunized it from liability for contribution.[2] In opposing the motion, Vertecs alleged that the settlement had not been reached in good faith and therefore that Fiberchem was not entitled to escape liability for contribution. The Honorable Charles Cranston held oral argument on January 15, 1982. In an order entered January 26, 1982, Judge Cranston treated the motion to dismiss as one for summary judgment pursuant to Civil Rule 12(b), and granted summary judgment to Fiberchem. He expressly found that Vertecs had failed to raise a genuine issue of material fact regarding the good faith of Fiberchem's settlement. Vertecs appeals this decision.

**I**

Vertecs challenges the good faith of the settlement between the plaintiffs and Fiberchem. Vertecs does not object to the amount of the settlement; rather, it alleges that there was no real settlement between the parties because the agreement was not reached at arm's length and because in reality the plaintiffs had no claims to settle. If the settlement was in bad faith, Fiberchem would not be immunized from contribution under AS 09.16.040.[3]

---

1. The underlying facts of this incident are more fully stated in *Vertecs Corp. v. Reichhold Chemicals, Inc.*, 661 P.2d 619 (Alaska 1983).

2. Vertecs had also claimed a right to indemnity from Fiberchem. In its motion to dismiss, Fiberchem alleged that the indemnity question was controlled by Judge Souter's decision in *Vertecs Corp. v. Reichhold Chemicals, Inc.* that as a putative concurrently negligent tortfeasor, Vertecs could not recover indemnity. Vertecs concedes on appeal that our decision in the *Vertecs v. Reichhold* appeal will control in this case. In *Vertecs Corp. v. Reichhold Chemicals, Inc.*, 661 P.2d 619 (Alaska 1983), we affirmed Judge Souter's decision. Thus, as the pleadings stood at the time of this appeal, Vertecs

could not claim a right of indemnity against Fiberchem.

3. AS 09.16.040 provides:
   When a release or covenant not to sue or not to enforce judgment is given *in good faith* to one or two or more persons liable in tort for the same injury or the same wrongful death
   (1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

■ Vertecs notes that the settlement was between Fiberchem and its liability insurer, Mission Insurance Company and the plaintiffs, and their subrogated insurer, Holland America Insurance Company. Mission Insurance Company and Holland America Insurance Company are evidently wholly owned subsidiaries of the same parent company, Mission Insurance Group, Inc. Because of this relationship Vertecs argues that the genuineness of the settlement "in the sense that it was reached by two parties having separate, distinct, and adverse interests is subject to question."

The subrogation agreement between the City of Yakutat, the Cooperative, and the Holland America Insurance Company allocated the losses between those parties as follows: $1,578,000 for the City, $890,000 for the insurance company, and $92,000 for the cooperative. The agreement provided for proportional allocation of any proceeds received from third parties in accordance with those figures. Under the agreement the greater portion of any settlement would be paid to the City and the cooperative. Thus in no sense can it be said that the settlement was simply a transfer between related insurance companies.

■ Vertecs also claims that there was no real settlement because the settlement was conditional upon Fiberchem's successfully moving to dismiss Vertecs' third party claim. We find nothing wrong with such a condition. The motion to dismiss was based in part on the settlement and the court had to address the settlement's good faith in order to dismiss the third party claim. Such an adjudication ordinarily should take place in advance of the trial on the primary tort suit. *Fisher v. Superior Court,* 103 Cal.App.3d 434, 163 Cal.Rptr. 47, 51 (1980) (issue of the good faith settlement between the plaintiff and the settling tortfeasor should be tried separately and in advance of the trial of the tort issues). Permitting settlements to be conditional upon a determination of their good faith tends to reduce

uncertainty and encourage settlements and is thus in accordance with the policies of the contribution act. *See Vertecs Corp. v. Reichhold Chemicals, Inc.,* 661 P.2d 619, 625 (Alaska 1983).

■ Vertecs next asserts that the settlement between Fiberchem and the plaintiffs was not in good faith because the plaintiffs in reality had no claims to settle. Vertecs argues that plaintiffs had no claims because all applicable statutes of limitations had run, and because Fiberchem would have had a valid defense under the doctrine that a subrogated insurer cannot sue its own insured to recover a loss. Vertecs argues that a defendant acting in good faith would not waive such defenses. Fiberchem responds that even though it might have successfully defended on statute of limitations grounds against a claim brought by plaintiffs, that would not have extricated it from the lawsuit since the statute of limitations defense would be inapplicable to contribution claims. Only by settling with the plaintiffs could Fiberchem buy its peace. The question is thus squarely presented whether a settlement of a defensible claim made primarily for the purpose of escaping contribution is necessarily not a settlement in good faith under the terms of AS 09.16.-040.[4]

Alaska's contribution among tortfeasors act is modeled on the 1955 revision to the Uniform Contribution Among Tortfeasors Act. The original 1939 act provided that a release of any tortfeasor would not release him from liability for contribution unless the release expressly provided for a reduction "to the extent of the pro rata share of the released tortfeasor" for the plaintiff's recoverable damages. Uniform Contribution Among Tortfeasors Act § 4 commissioner's comment, 12 ULA 99 (1955). The 1955 act's commentary makes it clear that this provision was seen as a deterrent to settlement because "[n]o defendant wants to settle when he remains open to contribu-

(2) *it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.*

(Emphasis added.)

4. For the text of AS 09.16.040, *see* note 3 *supra.*

tion in an uncertain amount, . . ." *Id.* For this reason the 1955 act provided that a good faith settlement would discharge a tortfeasor from all liability for contribution.

The commissioners have thus recognized that the desire to avoid contribution is an important motive in encouraging settlement. Since this is so, it could hardly be correct to say that a settlement prompted by a party's wish to avoid contribution is necessarily in bad faith. Since Vertecs has not claimed that either settling party was guilty of tortious or other wrongful conduct constituting bad faith [5] its attack on the settlement must fail.

AFFIRMED.

---

**5.** In *Dompeling v. Superior Court,* 117 Cal. App.3d 798, 173 Cal.Rptr. 38 (1981), the court stated:

> Where plaintiff settles with fewer than all defendants, the defendants are clearly adverse parties. A settling defendant does not owe a legal duty to adverse parties, the nonsettling defendants, to pay the plaintiff more so that the adverse parties may pay the plaintiff less. Plaintiff and defendants are also adverse parties; the plaintiff does not owe a legal duty to the nonsettling defendants to seek more from a settling defendant so that the nonsettling defendants may pay less.
>
> The settling parties owe the nonsettling defendants a legal duty to refrain from tortious or other wrongful conduct; absent conduct violative of such duty, the settling parties may act to further their respective interests without regard to the effect of their settlement upon other defendants.

*Id.* 173 Cal.Rptr. at 44–45. *See also Cardio Systems, Inc. v. Superior Court,* 122 Cal. App.3d 880, 176 Cal.Rptr. 254, 260 (1981).