[No. B004539. Second Dist., Div. Seven. June 10, 1985.]

BARTH-WITTMORE INSURANCE et al.,
Cross-complainants and Appellants, v.
H. R. MURPHY ENTERPRISES, INC., et al.,
Cross-defendants and Respondents.

COUNSEL

Jones & Wilson, Flahavan, Hudson & Francis and James T. Hudson for Cross-complainants and Appellants.

Sedgwick, Detert, Moran & Arnold, Lane J. Ashley and Michael R. Velladao for Cross-defendants and Respondents.

OPINION

LILLIE, P. J.—Cross-defendants and cross-complainants, Barth-Wittmore Insurance et al., appeal from order dismissing a cross-complaint for declaratory relief, finding that a settlement was made in good faith and specifying certain issues to be without substantial controversy. We have determined that the order purportedly appealed from is not an appealable order.

I

FACTS

H. R. Murphy Enterprises, Inc. (Murphy) entered into a contract with Thums Long Beach Company (Thums) to transport and haul oil field equipment to and from various Thums operating sites. The contract provided that Murphy would defend, indemnify and hold Thums harmless in any actions

for injury or death brought against Thums and arising in whole or in part from Murphy's performance under the contract. The contract required Murphy to carry compensation insurance and liability insurance including Thums as a named insured, and to deliver to Thums a duly completed and executed certificate of insurance evidencing the required coverage. Murphy's insurance agent, Barth-Wittmore Insurance (Barth), provided this certificate of insurance which showed Thums as an additional insured for general liability and automobile liability coverage.

A Murphy employee, Edgar Rough, was injured while working on Thums' premises pursuant to the Murphy-Thums contract. He filed a complaint for personal injuries against Thums. Thums cross-complained against Murphy and Barth, alleging, inter alia, that the injury was caused by Murphy's negligent training, supervision, management and control of its employee; that Murphy breached its contract with Thums by failing to name Thums as an insured on its policy; and that Murphy and Barth negligently misrepresented to Thums that it had been named as an additional insured. Thums sought complete indemnity, damages and declaratory relief. Murphy cross-complained against Barth, alleging that the certificate of insurance Barth issued to Thums indicating it was an additional insured was false and that Murphy reasonably relied on this negligent misrepresentation by Barth to its detriment. Murphy sought indemnity for any liability resulting under the Thums cross-complaint and the costs of defense and investigation in that cross-action.

Thums settled Rough's claim for personal injuries for $466,980.53. Thums and Murphy then entered into a settlement agreement on Thums' cross-complaint against Murphy and Barth: they stipulated that judgment be entered in favor of Thums and against Murphy in the amount of $466,980.53; Murphy assigned to Thums' insurer all rights, actions and claims it had against Barth in consideration of Thums' covenant not to execute on the stipulated judgment; and Thums agreed to dismiss its cross-complaint against Murphy with prejudice.

Barth answered Murphy's cross-complaint, asserting among other affirmative defenses that the damages and liabilities incurred by Thums were the result of Thums' negligence, not Murphy's, and that the settlement between Murphy and Thums was collusive and entered into in bad faith. Barth also filed a cross-complaint against Murphy and Thums seeking a declaration that the stipulated judgment between Murphy and Thums was entered into in bad faith and that Murphy and Thums should thereby be barred from prosecuting any claim or recovering any damages from Barth based on that settlement.

Murphy moved for order holding the Murphy-Thums settlement to be in good faith (Code Civ. Proc., § 877.6), and for order dismissing Barth's cross-complaint. Barth filed no opposition and did not appear at the hearing. The court found the settlement to have been made in good faith and ordered Barth's cross-complaint dismissed. Barth subsequently moved for order setting aside and/or reconsidering the dismissal of the cross-complaint. Murphy noticed a motion for the same date seeking summary adjudication of certain issues in its cross-action against Barth. After hearing, the court granted Barth's motion for order setting aside dismissal of the cross-complaint and for reconsideration of that order; the settlement between Murphy and Thums was determined to have been made in good faith; Barth's cross-complaint was ordered dismissed; and Murphy's motion for summary adjudication of two issues was granted.

## II

### APPEALABILITY OF GOOD FAITH DETERMINATION

 Barth appeals from this order; Murphy and Thums contend it is nonappealable. Generally an appeal may be taken from a judgment other than an interlocutory judgment. (Code Civ. Proc., § 904.1, subd. (a).) A decree is interlocutory if further judicial action is essential to a final determination of the rights of the parties. (*Eldridge* v. *Burns* (1978) 76 Cal.App.3d 396, 404 [142 Cal.Rptr. 845].); a determination that a settlement has been made in good faith is an interlocutory decree. Although section 904.1 sets forth several specific instances in which an interlocutory judgment may be appealed, the good faith determination is not among them. Thus, we conclude that an appeal from the good faith determination herein may not be taken prior to final judgment. However, we deem this to be an appropriate case in which to treat the purported appeal as application for writ of mandate.

 The policies underlying the discharge of a good faith settling tortfeasor under Code of Civil Procedure section 877 include the promotion of settlement of disputes and the finality of such settlements. (*River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 993 [103 Cal.Rptr. 498].) Where review of a settlement must await conclusion of the entire case, the intended finality is absent and promotion of settlement obviously thwarted. This impediment was recognized by the Legislature. The Legislative Counsel's Digest of Assembly Bill No. 232, Statutes 1984, chapter 311 (Reg. Sess.) notes: "Existing law does not expressly provide for appellate review prior to trial of a determination by the court

of the good faith of a settlement between the plaintiff and one or more joint tortfeasors in a case involving alleged multiple tortfeasors. [¶] This bill would provide that any party aggrieved by such determination may file a petition for review of the determination by writ of mandate, as specified." The Legislature thereafter added subdivision (e) to Code of Civil Procedure section 877.6: "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate." The subdivision then sets forth the procedural timetable for the petition.

This amendment was enacted in July 1984 and took effect January 1, 1985 (Gov. Code, § 9600, subd. (a)), long after issuance of the order from which this appeal is taken. However, consistent with this legislative action and the Legislature's clear intent to afford immediate writ review to parties aggrieved by a good faith determination, and in light of the fact that the issue has been fully briefed by the parties, we deem it proper to treat the purported appeal from this determination as a petition for writ of mandate, and proceed on that basis. (*Barnes* v. *Molino* (1980) 103 Cal.App.3d 46, 51 [162 Cal.Rptr. 786]; *Estate of Hoertkorn* (1979) 88 Cal.App.3d 461, 463, fn. 1 [151 Cal.Rptr. 806].)

III

GOOD FAITH OF SETTLEMENT

Appellant Barth's claim that the settlement was not in good faith is not the ordinary one that the settlement was disproportionately low—but rather that the settlement price was outrageously high. Barth argues that Murphy had no actual liability to Thums for the injury to the employee as the injury was caused by Thums' own negligence; thus Murphy should not have settled with Thums, and that settlement was entered into solely to "create" damages which Murphy could recover from Barth based on failure to name Thums as an additional insured, which failure actually caused no damage. The good or bad faith of a settlement is a question of fact to be determined by the trial court based on the evidentiary material presented to it. (*River Garden Farms, Inc.* v. *Superior Court, supra,* 26 Cal.App.3d 986, 998.) The California Supreme Court has recently provided guidance for determination of the good faith of a settlement pursuant to Code of Civil Procedure section 877.6: "[T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiff's total recovery and the settlor's propor-

tionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. (See *In re MGM Grand Hotel Fire Litigation* (D.Nev. 1983) 570 F.Supp. 913, 927.) Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. '[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.' (*Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 509 [203 Cal.Rptr. 825].) ▮ The party asserting the lack of good faith, who has the burden of proof on that issue (§ 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a 'settlement made in good faith' within the terms of section 877.6." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499-500 [213 Cal.Rptr. 256, 698 P.2d 159], fn. omitted.)

▮ With these considerations in mind, we examine the questioned settlement. The amount of the settlement was the exact amount that Thums had paid to the injured worker, which is certainly a reasonable estimate of Thums' potential recovery if Thums were successful in its cross action against Murphy, Barth, and Murphy's insurer. Barth argues, though, that Murphy had no liability to Thums; thus the amount of the settlement could not be reasonable. In support of this position, Barth submitted the declaration of an independent insurance consultant, who was familiar with the Murphy insurance policy and the facts of the employee's accident. It was his opinion that whether or not Thums was actually named as an additional insured on Murphy's policy had no bearing whatsoever on whether or not Thums was covered under the policy for the accident; he also expressed the opinion that if Thums were covered, the Murphy policy coverage would be secondary, not primary.

▮ However, the determinant of good faith is not the liability figure ultimately reached at trial, but whether the settlement is grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be. (*Torres* v. *Union Pacific*

*R.R. Co.* (1984) 157 Cal.App.3d 499, 509 [203 Cal.Rptr. 825].) "[T]he damages are often speculative, and the probability of legal liability therefor is often uncertain." (*Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 238 [132 Cal.Rptr. 843].) ▪ Such uncertainty is reflected in this case by the deposition testimony of Herbert Murphy, who signed the settlement documents on behalf of Murphy. He testified that although he did not think Murphy had actually caused Rough's accident, he felt Murphy might have liability to Thums because of the indemnification clauses in the Thums-Murphy work agreement. ▪ When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed. (*Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349]; *McGlothen* v. *Superior Court* (1981) 121 Cal.App.3d 106, 109 [175 Cal.Rptr. 129].) ▪ Faced with this conflicting testimony regarding Murphy's potential liability, the trial court determined the settlement to be in good faith, from which we may infer that the court also found that Murphy's estimate of potential liability was reasonable at the time of the settlement.

In considering the apportionment of liability between codefendants Murphy and Barth, we note that the settlement included an agreement by Thums not to execute against Murphy on the judgment, and an assignment to Thums of Murphy's claims against Barth. This is consistent with the theories of liability set forth in the Thums cross-complaint. Although in its first cause of action Thums alleged Murphy's negligent training and supervision of the injured worker as a cause of that worker's accident, Herbert Murphy stated in his deposition that he did not believe Murphy was liable on that basis. However, the remaining causes of action in the Thums cross-complaint are based on Barth's failure to have Thums named as an additional insured in Murphy's insurance policy, despite Murphy's request to Barth to do so, and on Barth's providing a certificate of insurance to Thums which misrepresented that such coverage had been obtained. The active wrongdoing alleged was that of Barth in negligently misrepresenting the existence of insurance coverage while failing to provide it; Murphy's part in the alleged incident derives entirely from Barth's conduct. The settlement allocating no financial responsibility to Murphy in exchange for the right to pursue Murphy's claim against the alleged actual wrongdoer appears to be a reasonable apportionment of liability based on the information available at the time of settlement. On that claim, Barth may, of course, present evidence that the failure to have Thums named as an additional insured was not the proximate cause of any damages Murphy may have sustained in the Thums cross action.

■ *Tech-Bilt* instructs the trial court to consider the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d 488.) ■ Herbert Murphy, in his deposition, stated that at the time of the settlement, Murphy had little or no income and was going out of business, so all that he had to salvage was what he had personally; if a judgment was obtained in excess of the $500,000 for which the Murphy corporations were insured, he felt he would be taking a chance on personal liability. By settling, he could avoid spending days in court and risking liability beyond his insurance policy limits. Moreover, his wife had had a stroke.

The evidence does not show that the settlement was collusive or that the settling parties aimed to injure the interests of Barth, but rather that Murphy had evaluated its exposure and chosen to buy its peace. (*Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45, 58 [200 Cal.Rptr. 136].) Appellant, who had the burden of proof, did not demonstrate that the settlement was so far "out of the ballpark" in relation to the factors set forth in *Tech-Bilt, supra,* 38 Cal.3d 488, as to be inconsistent with the equitable objectives of the good faith settlement statute. The record contains substantial evidence to support the trial court's determination that the settlement was made in good faith.

## IV

### DISMISSAL OF BARTH'S CROSS-COMPLAINT

■ Barth's contention that the trial court erred in dismissing its cross-complaint against Murphy and Thums is without merit. That cross-complaint sought a declaration that the settlement between Thums and Murphy was collusive and in bad faith; for that reason, Barth also sought a declaration barring Murphy and Thums from prosecuting any claim or recovering any damages from it based on the settlement. At the time this cross-complaint was filed, the good or bad faith of the settlement had not been determined. The trial court's subsequent determination under Code of Civil Procedure section 877.6 that the settlement was entered into in good faith resolved this issue.

Barth argues that the section 877.6 motion was inappropriate for this determination, and that the good faith issue should instead have been resolved by way of its declaratory relief action. Reliance is placed on *River Garden Farms, Inc.* v. *Superior Court, supra,* 26 Cal.App.3d 986, 1003,

wherein the court approves a declaratory relief action, with its priority of trial setting, as an appropriate means of hearing and determining whether a settlement under section 877 was made in good faith. But *River Garden Farms* was decided in 1972, prior to the 1980 enactment of section 877.6, which provides for determination of whether a settlement was made in good faith by noticed motion: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing." Barth and Murphy were alleged to be joint tortfeasors by Thums in Thums' cross-complaint; Murphy, one of the tortfeasors, settled with plaintiff Thums; as a party to this action, Murphy was entitled to a hearing on the issue of the good faith of its settlement with Thums under section 877.6, subdivision (a). The mere fact that Murphy did not need nor seek the protection from claims for contribution or indemnity available under subdivision (c) of that section is irrelevant. Nowhere in that section do we find language limiting use of the motion to parties who intend to assert the settlement as a bar to any claim for contribution or indemnity.

In its brief, Barth argues that section 877.6, subdivision (c) does not bar its declaratory relief action as that action does not seek contribution or indemnity from Murphy. Barth apparently misconstrues the basis for the dismissal of its cross-complaint. Murphy moved to dismiss the Barth cross-complaint on the ground that the good faith determination on its 877.6 motion rendered moot Barth's declaratory relief action for determination that the settlement was in bad faith, not on the ground that Barth's action was barred under 877.6, subdivision (c). ■ "A question may be deemed moot when, although it initially presented an existing controversy, the passage of time or the acts of the parties or a court decision have deprived the controversy of its life." (*Boccato* v. *City of Hermosa Beach* (1984) 158 Cal.App.3d 804, 808 [204 Cal.Rptr. 727]; *Guardianship of Baby Boy M.* (1977) 66 Cal.App.3d 254, 276 [135 Cal.Rptr. 866].) ■ The court's determination of good faith settlement pursuant to section 877.6 deprived Barth's declaratory relief action of any unresolved controversy and made that action unnecessary. A court may refuse to exercise its power to grant declaratory relief where its declaration or determination is not necessary under all the circumstances. (Code Civ. Proc., § 1061.) ■ The refusal to exercise the power is within the court's legal discretion and will not be disturbed on appeal except for abuse of discretion. (*Allstate Ins. Co.* v. *Fisher* (1973) 31 Cal.App.3d 391, 394-395 [107 Cal.Rptr. 251].) ■ We find no abuse of discretion in the trial court's dismissal of Barth's cross action for declaratory relief.

## V

### ADJUDICATION OF ISSUES WITHOUT CONTROVERSY

Barth also purports to appeal from that portion of the trial court's order adjudicating certain issues in the Murphy v. Barth cross-complaint to be without substantial controversy. As we explained hereinabove, appeal generally may be taken only from a final judgment. (Code Civ. Proc., § 904.1, subd. (a).) ▮ Where an issue necessary for disposition of an action remains for determination at trial, no final judgment may be entered prior to that adjudication, and the order specifying issues to be without substantial controversy may be reviewed only upon an appeal from the final judgment ultimately to be rendered in the case. (*Niederer* v. *Ferreira* (1983) 150 Cal.App.3d 219, 223-224 [197 Cal.Rptr. 685].) The summary adjudication in this instance was as to the following issues: "(1) that THUMS LONG BEACH COMPANY was not an additional insured on the Western Carriers Insurance Company Policy No. GLA77-0161; (2) that if BARTH is liable to MURPHY, the amount of damages recoverable by MURPHY against BARTH are established by its good faith settlement as $466,980.53." Still to be litigated is *whether* Barth is liable to Murphy; appeal from the summary adjudication of the other issues must await final judgment following that determination.

Writ review of an order specifying issues to be without substantial controversy (Code Civ. Proc., § 437c, subd. (f)) is authorized under Code of Civil Procedure section 437c, subdivision (*l*): "Upon entry of any order pursuant to this section except the entry of summary judgment, a party may, within 10 days after service upon him of a written notice of entry of the order, . . . petition an appropriate reviewing court for a peremptory writ. If the notice is served by mail, the period within which to file petition shall be increased by five days if the place of address is within the State of California . . . ." Notice of the trial court's order in this action was served on Barth on January 19, 1984. Ten days after service is January 29; since service was by mail, an additional five days are added, extending to Friday, February 3, 1984, the period within which Barth could have petitioned this court for a peremptory writ. Herein, no petition was filed before or after that date. Nor can we treat the notice of appeal as a timely petition, as it was not filed until March 5, 1984, well beyond the statutory period for filing a petition. Unlike the good faith determination discussed in section II, *supra,* for which no writ procedure was available at the time this appeal was taken, writ review of the summary adjudication of issues was specifically available to Barth at that time under section 437c, and the procedural

timetable was clearly set forth in that section. Compliance with this time requirement is mandatory if a party wishes to obtain prejudgment review of an order under section 437c. (*Sturm, Ruger & Company* v. *Superior Court (Smith)* (1985) 164 Cal.App.3d 579 [210 Cal.Rptr. 573].) For that reason, we deny the petition as untimely under Code of Civil Procedure section 437c, subdivision (*l*).

## VI

### DISPOSITION

The petition for writ of mandate is denied.

Thompson, J., and Johnson, J., concurred.